HALLADAY, APPELLANT, *v.* STATE BANK OF FAIRFIELD
ET AL., RESPONDENTS.

(No. 5,025.)

(Submitted January 22, 1923. Decided February 10, 1923.)

[212 Pac. 861.]

*Malicious Prosecution—Institution of Action by County Attorney After Consultation With Accuser—Nonliability of Accuser.*

Malicious Prosecution—Want of Probable Cause—Malice.
1. In an action for malicious prosecution plaintiff must show malice and want of probable cause, but when he has established want of probable cause, malice will be presumed.

Same—Prosecution Instituted by County Attorney After Consultation With Defendant—Defense.
2. Where a county attorney starts a criminal proceeding upon a full and fair statement of the facts by the accuser he acts as much for the state as if he had proceeded upon his own personal knowledge, and the informant cannot be held liable in an action for malicious prosecution.

---

2. Advice of counsel as defense to an action for malicious prosecution, see notes in 1 Ann. Cas. 932; 11 Ann. Cas. 954; Ann. Cas. 1912D, 423; 18 L. R. A. (n. s.) 49; 29 L. R. A. (n. s.) 281.

Same—Probable Cause—When Question One of Law.
    3. In an action for malicious prosecution, the evidence in which showed that defendant after advising the county attorney of the facts in his possession which later prompted the attorney to bring a charge of obtaining money by false pretenses against plaintiff (which he subsequently dismissed), thus leaving the case to the prosecuting officer to determine for himself whether there was probable cause for the institution of the criminal action, the question of probable cause was one of law for the court's determination.

*Appeal from District Court, Teton County; John J. Greene, Judge.*

ACTION by Earl Halladay against the State Bank of Fairfield and another. From a judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Cole & Parker* and *Messrs. Norris, Hurd & Rhoades,* for Appellant, submitted a brief; *Mr. W. B. Rhoades* argued the cause orally.

The fact that the criminal complaint was signed by the county attorney does not relieve the respondents, if it can be shown that the making of the complaint was at their suggestion or instigation. The fact that the respondents did not sign the complaint does not protect them in this action, provided they caused the unlawful arrest. 26 Cyc., page 17, says: "To sustain the action it must affirmatively appear as a part of the case of the party demanding damages, that the party sought to be charged was the proximate cause of maliciously putting the law in motion." (*Wilkinson* v. *Arnold,* 11 Ind. 45; *Miller* v. *Metropolitan Life Ins. Co.* (Ky.), 89 S. W. 183; *Walser* v. *Thies,* 56 Mo. 89; *Porter* v. *Mack,* 50 W. Va. 581, 40 S. E. 459; *Cook* v. *Proskey,* 138 Fed. 273, 70 C. C. A. 563; 26 Cyc. 68.)

In *Tangney* v. *Sullivan,* 163 Mass. 166, 39 N. E. 799, the court said: "The fact that, and according to the practice in the court where the criminal proceedings were had, the chief of police signed and swore to the written complaint, does not save

---

3. Probable cause for malicious prosecution as question for court or jury, see notes in Ann. Cas. 1912C, 1043; L. R. A. 1915D, 1.

the defendant if he intentionally induced the chief of police to do so, acting in good faith on defendant's information." (Citing *Gibbs* v. *Ames,* 119 Mass. 60; *In re Mills,* 64 Iowa, 891, 20 N. W. 486; *Dann* v. *Wormser,* 38 App. Div. 460, 56 N. Y. Supp. 474; Addison on Torts, 6th ed., 231.)

*Mr. George Coffey, Jr.,* and *Messrs. Cooper, Stephenson & Hoover,* for Respondents, submitted a brief; *Mr. W. H. Hoover* argued the cause orally.

This court has held in *Cadell* v. *Brown,* 57 Mont. 266, 187 Pac. 897, that where the evidence in an action for malicious prosecution shows that the county attorney had acted upon his own initiative after an investigation and without consulting or advising with the defendants, a directed verdict in favor of the latter was proper. (See, also, *Beadle* v. *Harrison,* 58 Mont. 606, 194 Pac. 134; *Smith* v. *Davis,* 3 Mont. 109.)

MR. JUSTICE COOPER delivered the opinion of the court.

This is an action to recover damages for malicious prosecution. The complaint alleges that the defendants, with intent to injure the good name and reputation of the plaintiff, on October 16, 1916, appeared before the county attorney of Teton county and falsely, wrongfully, unlawfully, and maliciously caused to be instituted in the justice's court of Chouteau township criminal proceedings charging the plaintiff with obtaining from the defendant bank, upon false representations and pretenses, the sum of $3,750; that a warrant was issued out of that court, delivered to the sheriff of Teton county, and on December 17, 1919, plaintiff was arrested and remained in the custody of the officer from that day until the first day of January, 1920. He was brought from the state of Oklahoma, taken into court, and examined upon the charge. After a hearing the justice of the peace, upon motion of the county attorney, discharged him and dismissed the proceedings. Since that time no other complaint has been instituted or prosecuted against him upon that or any other charge.

The defendants by answer admit the arrest, prosecution, and discharge of the plaintiff, but deny the accusation of malice or arrest without probable cause.

The cause was tried before the court and a jury. At the end of plaintiff's case the district court granted a motion for a directed verdict, upon the grounds that the complaint did not state a cause of action, that there was not sufficient evidence to connect the defendant corporation with the institution of the prosecution, and that as to neither defendant was there sufficient evidence to show that the prosecution was instituted without probable cause or with malice, and directed a verdict in favor of the defendants. Hence these appeals.

The plaintiff's five specifications of error all relate to the failure of the court to give effect to the evidence touching malice and want of probable cause.

In the spring of 1916 the plaintiff was residing in the town of Fairfield, in Teton county. He conceived the idea of building a gristmill there, but did not have sufficient capital to erect the plant and put it in operation. About this time he met the defendant Elmer Genger, who was the manager of the Townsite Company of Fairfield, a corporation owning property in and about that place. Genger, who later became vice-president of defendant bank, suggested to plaintiff that he could borrow sufficient money to build the gristmill, but that it would be necessary to arrange the matter with Mr. Kelso, who was then in charge of the bank. Prior to this time the plaintiff had been doing his banking business with the Hirschberg Bank, at Choutau, and was then owing that institution the sum of $4,600, the defendant bank $2,200, besides other debts. After laying his plans before Mr. Kelso, it was agreed that the bank would loan him the money to erect the proposed mill, the loan to be repaid out of the profits of the mill after operations began. It was estimated that the cost of the mill would be about $1,500. He then asked for an additional loan of $500. Then it was that, upon Mr. Kelso's request, the statement made the basis of the charge of obtaining money on false pretenses

was furnished by plaintiff. Among other property there were listed therein 160 acres of land located six miles east of the town of Fairfield. Final proof had been made thereon under the Reclamation Act (8 Fed. Stats. Ann., 2d ed., page 692 *et seq.;* U. S. Comp. Stats., sec. 4674 *et seq.*), but patent could not issue until the water charges for irrigation were fully paid. They were unpaid at that time. This land the plaintiff had purchased of Mr. Genger, about six months prior to the making of the statement, for about $2,800. The plaintiff's estimate of $5,000 as the value of the land was based upon information to the effect that 160 acres of similar land, in close proximity to this land, had sold for that figure. The other tract listed in the statement was 160 acres of unimproved land adjoining the town of Fairfield, and which was valued by him at $100 per acre. Genger was familiar with land values in that vicinity. Fred W. Kelso, the manager of the defendant bank, testified that he was familiar with lands under the proclamation project and their value, had made some loans on farms which formed part of it, and was aware of the fact that the government had a lien on all the lands under the irrigation ditch. Included in the statement were also 450 acres of wheat, which the plaintiff estimated would produce an average of fifteen bushels to the acre, which at the minimum price of $1.35 per bushel, would bring something over $9,000. In the statement the estimate was placed at $8,000. Altogether the plaintiff estimated he was worth $27,000 over and above his obligations.

Let us assume, for the purposes of these appeals, that the [1] plaintiff had made out a *prima facie* case. Still he was obliged to go further, and show that the criminal proceeding was infected with malice and was begun without probable cause. In this class of actions probable cause is the foundation of the case. Upon the existence of such belief that question rests. So that, when a party has established want of probable cause, malice will be presumed. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33; *Beadle* v. *Harrison,* 58 Mont. 606, 194 Pac. 134; *Hawley* v. *Richardson,* 60 Mont. 118, 198 Pac. 450;

*Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489.)   To prove
want of probable cause and that the defendants were actuated
by malice, the plaintiff called Mr. George W. Magee, the county
attorney, and proved that Genger had communicated to him his
version of the facts. His testimony was substantially as
follows: Genger exhibited the statement, and stated that he
had submitted it to his attorney, Mr. Coffey, who had advised
him to see witness, as county attorney, and relate the facts in
the case; that by the statement it appeared that the plaintiff
owned two tracts of land, when in fact he did not own either
of them, did not have title to them; that Genger had also been
told by Ray Halladay, the brother of the plaintiff, that he did
not own the horses as he claimed, or any horses at all; that he
(Genger) did not say he would disprove his ownership in the
land, but just simply said that Mr. Kelso would testify that,
when the statement was made, it recited the fact that the plain-
tiff was the owner of the land, and also that he owned a num-
ber of horses; that Kelso would testify that the plaintiff had
secured this money upon the financial statement; that he did
not remember what Genger said about the mill, but simply
that he borrowed the money from the bank before he (Genger)
had anything to do with the loaning of money on its behalf.
Literally, his further testimony was: "We discussed the mat-
ter at some length. Of course, I questioned him as to all
these facts about the statement, and then he told me that Mr.
Halladay was in Oklahoma, and, of course, that was an element
in the conversation on account of the expense, and it was first
a proposition of perhaps Mr. Halladay's coming back, and what
would be done, and he said he had discussed the matter with
his attorney, and had been referred to me, and he says: 'You
are the county attorney, and it is up to you.'   Q. That is, after
giving you all the facts in his possession and answering your
questions with reference to it, he said, 'It is up to you?'
A. Well, that is what it meant, anyway. I don't know whether
he used those exact words, but he submitted it to me and in a
matter of that kind I claim to have some authority.   *   *   *

So far as I can see, Mr. Genger gave me the attitude of wanting to give me all the facts he had in his posesssion and have my best judgment on the question of the prosecution. He answered all my questions, and I asked for full information. He says, 'You are the county attorney,. and it is up to you,' and spoke about having advice from Mr. Coffey. * * * There wasn't much said about the horses. * * * If you want me to explain: A man might have 50 head of horses on the range, and branded and turned loose, and he might still claim to own them, and there was such a chance for a slip, and I saw there was no use of going any further. * * * I dismissed the matter of the horses for reasons of my own.''

Notwithstanding the fact that the evidence adduced by the plaintiff proved beyond doubt that the property listed in the statement was of value more than the amount of money advanced by the bank, and that the plaintiff actually had title to the land, still the vital question left was: Did Genger, with malicious intent, give to the prosecuting officer only a partial account of the transaction, and not full, fair, and truthful information as to the facts? Manifestly, if the county attorney acted upon knowledge independent of that furnished by the defendants, no liability could attach to them. The rule is that, [2] where the prosecuting officer starts a criminal proceeding upon a full and fair statement of the facts from the accuser, he acts for the state; and so he does when he proceeds upon his own personal knowledge. In a case of this nature, the establishment of three propositions is necessary: (1) The fact of the alleged prosecution and the fact that it terminated in plaintiff's favor. (2) That the defendant did not have probable cause. (3) That he acted from malicious motives. (*Hamilton* v. *Smith,* 39 Mich. 222.) ''While the courts should not discourage actions for malicious prosecution by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury, at the same time all proper guard and protection should be thrown around those who, in obedience to

the mandates of duty, may be compelled to originate and carry on a criminal prosecution which may from any cause terminate in favor of the accused.'' (Newell on Malicious Prosecution, sec. 15, p. 22.)

Generally it may be said that a prosecuting officer is charged with the duty of determining when to commence a particular prosecution, and when to discontinue it. He stands upon a different footing from a defendant, who goes to a justice of the peace, swears out a warrant, and directs the prosecuting officer to see to its execution. The county attorney in this state, not only directs under what conditions a criminal action shall be commenced, but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes. As is said by the superior court of Pennsylvania, in *Laughlin* v. *Clawson,* 27 Pa. 330: ''If the officers of the state   *   *   *   consider that a given state of facts is sufficient evidence of probable cause, how can a private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing?   *   *   *   If such officers make a mistake, it is an error of government itself, and the government cannot allow the citizen to suffer for his trust in its proper functionaries.''

If, therefore, a prosecuting officer incorrectly determines that certain facts given to him constitute a crime, and proceeds to set on foot the necessary action, the informant is not liable, because the fault is not his, but is that of the officer. (*Van Meter* v. *Bass,* 40 Colo. 78, 18 L. R. A. (n. s.) 50, and note 90 Pac. 637. In *Cohen* v. *Morgan,* 6 Dowl. & R. 8, Abbott, Chief Justice, said: ''There is nothing in the defendant's conduct to show that he was influenced by malice. To support the averment of malice, it must be shown that the charge is willfully false. But here, according to the evidence, the defendant merely related his story to the magistrate, leaving it to him to determine whether the facts amounted to a felony.'' And so of the present case. While the plaintiff charges the **[3]** defendants with resorting to criminal proceedings for the

collection of a debt, the evidence is that the complaining witness, after communicating all the essential facts to the prosecuting officer, ended the interview by confiding the entire matter to his legal discretion. Thereafter, as the legal representative of the state, he caused the criminal action to be instituted and prosecuted to the point where it became apparent that the evidence of fraud and misrepresentation was not legally sufficient to sustain the charge, and then dismissed the complaint. This makes it perfectly clear that the prosecution was set on foot by the county attorney upon what he conceived to be probable cause. Unlike the case of *Cornner* v. *Hamilton, supra,* is the instant case, as shown by the following remarks of Mr. Justice Galen, which make that case clearly distinguishable from the one at bar: "In this case, it appears plain that the defendant did not fully and fairly state all the facts to the county attorney concerning the alleged burglary, and therefore the attorney's advice is no defense."

The evidence is undisputed, and not susceptible to the inference that Genger concealed from the public prosecutor some important fact it was his duty to disclose. By the testimony of Mr. Magee, it is also shown that Genger, after answering all his questions, left the case with the county attorney to determine for himself whether there was in fact probable cause for the institution of a criminal action. The question was thus resolved into one of law for the court. (*Moore* v. *Northern Pacific Ry. Co.,* 37 Minn. 147, 33 N. W. 334; *Johnson* v. *Miller,* 69 Iowa, 562, 29 N. W. 743, 58 Am. Rep. 231; *Borg* v. *Bringhurst,* 105 Wash. 521, 178 Pac. 450.)

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.