PUUTIO, Appellant, v. ROMAN, Respondent.

(No. 5,876.)

(Submitted March 24, 1926. Decided April 2, 1926.)

[245 Pac. 523]

*Malicious Prosecution—Complaint—Sufficiency—Malice—Want of Probable Cause—Proving Negative—Slight Evidence Sufficient—Directed Verdict—Rebuttal Testimony—Admissibility.*

Directed Verdict—When Improper.
  1. A case should never be withdrawn from the jury unless the conclusion necessarily follows, as a matter of law, that recovery cannot be had upon any view which can reasonably be taken of the facts which the evidence tends to establish.

Same—Motion in Effect Demurrer to Plaintiff's Evidence.
  2. A motion for a directed verdict in favor of defendant is in effect a demurrer to the plaintiff's evidence; it admits as true all material facts in evidence which tend to establish plaintiff's cause of action, with every legitimate inference that may be drawn from them, whether such facts be produced by the plaintiff or the defendant, they to be viewed in the light most favorable to the plaintiff.

Same—What Insufficient to Warrant Granting of Motion.
  3. On motion of defendant for a directed verdict, the fact that the testimony in behalf of the defense pleaded is uncontradicted does not justify the granting of the motion, if the inferences to be drawn from it are open to different conclusions by reasonable men.

Malicious Prosecution—Complaint—Sufficiency.
  4. Under the rule that an action for malicious prosecution lies though the accusation made the basis of the action did not charge the commission of a crime, provided the necessary elements of such an action are present, *held*, that a complaint alleging that the defendant filed a complaint in a justice's court charging plaintiff with the "crime" of eloping with defendant's son and enticing

---

  1.  See 26 R. C. L. 1067.
  2.  See 26 R. C. L. 1074.
  3.  See 26 R. C. L. 1077.

him away from his home, thereby causing her arrest and imprisonment in the county jail, *etc.*, stated a cause of action for malicious prosecution.

Same—Proving Want of Probable Cause—Slight Evidence Sufficient.
5.  To prove want of probable cause for the institution of a criminal proceeding, *i. e.*, want of reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense charged against him, is to prove a negative and slight evidence is sufficient for that purpose.

Same—Malice Inferable from Want of Probable Cause.
6.  Malice in the institution of a malicious prosecution may be inferred from a want of probable cause, and where defendant made false statements to the county attorney in his effort to have a complaint drawn and a warrant issued for the arrest of plaintiff, such fact is material as reflecting upon the issues of malice and want of probable cause.

Same—Procurement of Warrant for Arrest by False Statements · to County Attorney—Effect.
7.  Where defendant in an action for malicious prosecution made false statements to the county attorney to induce him to act, he cannot escape liability by insisting that it was that officer, and not he, who was responsible for setting in motion the machinery of the law.

Directed Verdict—Showing of Nominal Damages Recoverable Sufficient to Defeat Motion.
8.  Where plaintiff makes out a case for nominal damages, it is sufficient to defeat a motion for a directed verdict in favor of defendant.

Trial — Evidence — Plaintiff  Anticipating  Defense — Rebuttal — Admissibility.
9.  Whether, where plaintiff in his case in chief by his evidence anticipates the defense pleaded, he should, after defendant has introduced his evidence, be permitted to introduce rebuttal testimony is largely within the discretion of the trial court, but he should be permitted to do so if he was unable to anticipate every matter which was disclosed by the defense.

---

[1–3]   Malicious Prosecution, 38 C. J., sec. 200, p. 509, n. 62.   Trial, 38 Cyc., p. 1517, n. 59; p. 1533, n. 28 New; p. 1565, n. 76, 77; p. 1569, n. 6; p. 1577, n. 36; p. 1586, n. 8.
[4]   Malicious Prosecution, 38 C. J., sec. 10, p. 389, n. 98, 99, 1, 2, 3.
[5]   Malicious Prosecution, 38 C. J., sec. 148, p. 476, n. 92; sec. 189, p. 499, n. 78; p. 500, n. 81 New; sec. 193, p. 504, n. 21.
[6]   Malicious Prosecution, 38 C. J., sec. 68, p. 425, n. 9; sec. 197, p. 507, n. 40.
[7]   Malicious Prosecution, 38 C. J., sec. 25, p. 397, n. 14, 20; sec. 176, p. 489, n. 61; sec. 184, p. 494, n. 7.
[8]   Damages, 17 C. J., sec. 59, p. 722, n. 57.   Trial, 38 Cyc., p. 1578, n. 38.
[9]   Trial, 38 Cyc., p. 1355, n. 23, 25, 26.

5.   See 18 R. C. L. 52.
6.   Inference of malice from want of probable cause, see notes in 12 Am. Dec. 267; 93 Am. St. Rep. 462; 4 L. R. A. 257; 21 Ann. Cas. 760.   See, also, 18 R. C. L. 30.
7.   See 18 R. C. L. 18.
9.   See 26 R. C. L. 1041.

[76 Mont. 105.]

*Appeal from District Court, Carbon County; Hugh J. Miller, Judge.*

ACTION by Sadie Mae Puutio against Steve Roman. Judgment for defendant and plaintiff appeals. Reversed and remanded for new trial.

*Mr. John G. Skinner* and *Mr. George S. Smith,* for Appellant, submitted a brief and argued the cause orally.

Citing on the following subjects:

Damages: *Rule* v. *McGregor,* 115 Iowa, 323, 88 N. W. 814; *Phelps* v. *Coggswell,* 70 Cal. 201, 11 Pac. 628; *Ruth* v. *St. Louis Transit Co.,* 98 Mo. App. 1, 71 S. W. 1055; *Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489; *Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33; *Grorud* v. *Lossl,* 48 Mont. 274, 136 Pac. 1069.

Advice of counsel: *Cornner* v. *Hamilton,* above; *Halladay* v. *State Bank,* 66 Mont. 118, 212 Pac. 861.

Criminal complaint not stating facts sufficient to constitute a public offense: *McIntosh* v. *Wales,* 2 Wyo. 397, Ann. Cas. 1916C, 273, 134 Pac. 274; *Potter* v. *Gjertsen,* 37 Minn. 386, 34 N. W. 746; *Spencer* v. *Lambert,* 68 Okl. 291, 173 Pac. 1035; *George* v. *Williams,* 26 Ariz. 91, 222 Pac. 410; *Peterson* v. *Hoyt,* 4 Alaska, 713; *Baker* v. *Langley,* 3 Ga. App. 751, 60 S. E. 371; *Bell* v. *Keepers,* 37 Kan. 64, 14 Pac. 542.

Malice and want of probable cause: *Cornner* v. *Hamilton; Grorud* v. *Lossl, supra.*

*Mr. H. C. Crippen* and *Mr. Frank P. Whicher,* for Respondent, submitted a brief, and argued the cause orally.

"Where there is no evidence of want of probable cause, or where, upon the undisputed facts and the view of the disputed facts most favorable to the plaintiff, the court can say as a matter of law that there was probable cause, the court should not submit any question to the jury, but should

grant a nonsuit or direct a verdict for the defendant.'' (16 Cal. Jur. 753, 18; *Davis* v. *Pacific T. & T. Co.*, 127 Cal. 312, 57 Pac. 764, 59 Pac. 698; *Redgate* v. *Southern Pac. Ry. Co.*, 24 Cal. App. 573, 141 Pac. 1191; *Jirku* v. *Brod*, 42 Cal. App. 796, 184 Pac. 413; *Sarvis Timber Co.* v. *Bitzer*, 66 Colo. 606, 185 Pac. 265; *Hewelcke* v. *Shipman*, 65 Cal. App. 257, 223 Pac. 1019; *Rawson* v. *Leggett*, 184 N. Y. 504, 77 N. E. 662; *Michael* v. *Matson*, 81 Kan. 360, L. R. A. 1915D, 1, 105 Pac. 537; *Simmons* v. *Gardner*, 46 Wash. 282, L. R. A. 1915D, 16, 89 Pac. 887; *Remington Typewriter Co.* v. *Nolan*, 250 Fed. 685.)

''To constitute malice, there must have been a motive or purpose, and it must have been an improper one.'' (18 R. C. L., p. 29, sec. 16; 16 Cal. Jur., p. 736, sec. 8.) An inference of malice from the facts and circumstances warranting a finding of want of probable cause may not always be drawn, even if there was no probable cause. (18 R. C. L., p. 31, sec. 17; *Runo* v. *Williams*, 162 Cal. 444, 122 Pac. 1082; *Redgate* v. *Southern Pac. Co.*, *supra; Griswold* v. *Horne*, 19 Ariz. 56, 165 Pac. 318; *Atkinson* v. *Birmingham*, 44 R. I. 123, 116 Atl. 205.)

The evidence as a whole shows conclusively that the county attorney of Carbon county is the responsible agency for the prosecution of this plaintiff. (See *Halliday* v. *State Bank of Fairfield*, 66 Mont. 111, 121 Pac. 861.)

The complaint does not state facts sufficient to constitute a cause of action. (See 16 Cal. Jur. 732; *Hahn* v. *Schmidt*, 64 Cal. 284, 30 Pac. 818; *Krause* v. *Spiegel*, 94 Cal. 370, 28 Am. St. Rep. 137, 15 L. R. A. 707, 29 Pac. 707; *Harrington* v. *Tibbet*, 143 Cal. 78, 76 Pac. 816; *Newman* v. *Davis*, 58 Iowa, 447, 10 N. W. 852; *Segusky* v. *Williams*, 89 S. C. 414, 36 L. R. A. (n. s.) 230, and note, 71 S. E. 971; *Satilla Mfg. Co.* v. *Cason*, 98 Ga. 14, 58 Am. St. Rep. 287, 25 S. E. 909; *Maher* v. *Ashmead*, 30 Pa. 344, 72 Am. Dec. 708; *Kramer* v. *Lott*, 50 Pa. 495, 88 Am. Dec. 556; *Broom* v. *Douglass*, 175

Ala. 268, Ann. Cas. 1914C, 1155, 44 L. R. A. (n. s.) 164, 57 South. 860; *George* v. *Williams,* 26 Ariz. 91, 222 Pac. 410.)

Damages: That the jury may allow damages "although no estimate in value of the injury so caused has been given in evidence" is very true. But in no case cited by appellant is there a statement that no evidence need be offered, except the simple fact of the arrest. The assertion that she was "injured in her good name and credit and brought into public disgrace and was prevented from attending to her business, and that she has been injured in her good name and reputation" does not prove them. An allowance of damages does not mean without evidence.

Will it be sufficient to have it appear from the allegations of the complaint "that plaintiff has maliciously and without probable cause been vexed and harassed by a criminal prosecution" in order to allow damages to be measured? Is that what is meant in the case of *Grorud* v. *Lossl,* cited, or does not it mean that an allegation of that character will be sufficient to sustain the action? "This includes humiliation, mental suffering, everything done by officers at the police station within their authority, the change in the conduct and manner of acquaintances toward the plaintiff, and any financial loss resulting to her directly from the prosecution. (*Markham* v. *Russell,* 12 Allen (Mass.), 573, 90 Am. Dec. 169; *Wheeler* v. *Hanson,* 161 Mass. 370, 42 Am. St. Rep. 408, 37 N. E. 382.) The testimony objected to on these issues was therefore competent." (*Rich* v. *Rogers,* 250 Mass. 587, 37 A. L. R. 656, 146 N. E. 246.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The record discloses that for a year and a half or two years prior to February 7, 1925, Sadie Mae Puutio, twenty years of age, and John Roman, about seven months older, but under twenty-one, had been going together much against the wishes

and to the great annoyance of young Roman's parents and sisters. Numerous reports had been made to the parents that Miss Puutio was not a chaste person and they believed that the association of the young people was responsible for their son's gambling and drinking habits. They had sent him away from the home at Red Lodge on numerous occasions in the hope that he might be weaned away from his attachment for Miss Puutio, but upon his return each time he had resumed his association with her. About two weeks before February 7 they sent John to Minneapolis, but he returned to Billings on February 6, called Miss Puutio on the long-distance telephone and talked with her. Later on the same day he called his parents, advised them that he was in Billings; that he had talked with Miss Puutio; and that she had directed him to remain in Billings until she came there on the day following. John was requested by his parents to come to Red Lodge on the morning train on February 7, but he disregarded the request; however, he left Billings by automobile, about noon on February 7 and arrived in Red Lodge about 4 P. M. and went to the home of his parents. When John failed to arrive in Red Lodge by the train on the morning of February 7, Steve Roman, his father, went to the office of the county attorney and, after making numerous representations and expressing his belief that Miss Puutio was leaving Red Lodge by the afternoon train for Billings for the purpose of marrying John, he procured the county attorney to draft a complaint, which, with his verification, reads as follows:

"That one Sadie Mae Puutio, a prostitute, on or about the 7th day of February, A. D. 1925, at Red Lodge in the county of Carbon, state of Montana, committed the crime of eloping with John Roman, a minor, under the age of twenty-one years, in that the said Sadie Mae Puutio did, then and there being, willfully, wrongfully and unlawfully entice away from his parents and guardians, with the intent to corrupt the said John Roman, contrary to the form, force and effect of the

statute in such case made and provided, and against the peace and dignity of the state of Montana.

"Said complaint, therefore, prays that a warrant may issue for the arrest of the said Sadie Mae Puutio and that she may be dealt with according to law.

"Steve Roman.

"Subscribed and sworn to before me this 7th day of February, 1925.

"E. B. Provinse,
"Justice of the Peace."

Upon filing this complaint, Roman procured a warrant which he caused to be delivered to the sheriff and by virtue of which Miss Puutio was arrested and confined in jail. Later, and without a hearing, that proceeding was dismissed, and thereafter this action to recover damages for malicious prosecution was instituted. After issues were joined, the cause was brought to trial to the court sitting with a jury. At the conclusion of all of the evidence the court directed a verdict in favor of the defendant, and judgment was duly entered thereon dismissing plaintiff's complaint. From that judgment this appeal is prosecuted.

The ultimate question for solution is: Did the trial court err in directing a verdict for the defendant?

It is settled in this jurisdiction, and elsewhere generally, [1-3] that a cause should never be withdrawn from a jury, unless the conclusion necessarily follows, as a matter of law, that a recovery cannot be had upon any view which can reasonably be taken of the facts which the evidence tends to establish. (*Wagner* v. *Donald,* 67 Mont. 114, 214 Pac. 1099; *Conrad Mercantile Co.* v. *Siler,* 75 Mont. 36, 241 Pac. 617.) A motion for a directed verdict in favor of the defendant is in effect a demurrer to the plaintiff's evidence (*McIntyre* v. *Northern Pac. Ry. Co.,* 56 Mont. 43, 180 Pac. 971); it admits as true all material facts in evidence which tend to establish plaintiff's cause of action (*Mitchell* v. *Northern Pac. Ry. Co.,*

63 Mont. 500, 208 Pac. 903), whether such facts be produced
by the plaintiff or the defendant (*Pratt* v. *Kistler*, 72 Mont.
356, 233 Pac. 600). Such facts, with every legitimate infer-
ence that may be drawn from them (*Koerner* v. *Northern Pac.
Ry. Co.*, 56 Mont. 511, 186 Pac. 337), are to be considered in
the light most favorable to the plaintiff (*Mitchell* v. *Northern
Pac. Ry. Co.*, above). The fact that the testimony in behalf
of the defense pleaded is uncontradicted will not justify a
directed verdict in favor of the defendant, if the inferences to
be drawn from it are open to different conclusions by reason-
able men. (*First Nat. Bank* v. *Wilson*, 57 Mont. 384, 188
Pac. 371.)

While recognizing the full force and effect of these rules,
counsel for the defendant, nevertheless, insist that the court
did not err in directing the verdict.

1. Because the complaint filed with the justice of the peace
[4] does not charge the commission of a crime, it is urged
that it could not be the foundation for an action for damages
for malicious prosecution, and decided cases are to be found
which apparently support this contention. However, the
overwhelming weight of authority, and the better reasoning,
are opposed to that view.

In 38 C. J. 389, it is said: "While there is some authority
for the rule that no action for malicious prosecution will lie
where the affidavit, complaint, indictment or information, or
warrant, fails to state facts constituting a crime, according to
the weight of authority, if the necessary elements of an action
for malicious prosecution are present, the action will lie not-
withstanding the affidavit, complaint, indictment or informa-
tion, or warrant, did not allege facts constituting the crime
charged or any crime known to the law. It is said that the
fact that the acts charged do not constitute a criminal de-
fense [offense] is material only in so far as such fact may
affect the amount of actual damages suffered by the injured
party."

In Newell on Malicious Prosecution, section 22, the author says: "There is some authority for the prosecution that, to serve as a basis for the action, the prosecution must be by a sufficient indictment or complaint. The weight of the authorities is, however, the other way, and good sense and reason are with these authorities; for when one maliciously, and without probable cause, subjects another to a criminal prosecution, the injury is the same whether it is instituted on a false statement of facts or a false conclusion of law. If the reason for the action lay solely in the danger of punishment in which the man is put, it might be otherwise. But the action lies because of the disgraceful imputation put upon him, the injury caused by his arrest, and the trouble and expense he is put to in defending himself."

A few of the leading cases which support these texts are: *Potter* v. *Gjertsen,* 37 Minn. 386, 34 N. W. 746; *Beuthner* v. *Ellinger,* 90 Wis. 439, 63 N. W. 756; *Bell* v. *Keepers,* 37 Kan. 64, 14 Pac. 542; *McIntosh* v. *Wales,* 21 Wyo. 397, Ann. Cas. 1916C, 273, 134 Pac. 274; *Nelson* v. *Hill* (N. M.), 232 Pac. 526.

It is our conclusion that the complaint herein states a cause of action.

2. It is urged that the evidence does not even tend to prove [5] want of probable cause.

"Probable cause is defined to mean reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense with which he is charged." (*Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489.) To prove want of probable cause is to prove a negative, and the authorities hold generally that slight evidence is sufficient for that purpose. (18 R. C. L. 52.)

In the complaint filed with the justice of the peace the defendant charged that on or about the seventh day of February, 1925, Miss Puutio committed the crime of eloping with John Roman, a minor, and that she did then and there unlawfully

76 Mont.—8

entice him away from his parents. Bearing in mind the definition of "probable cause" given above, there cannot be any doubt that, from all the facts and circumstances developed upon the trial of this case, a jury might have found that this defendant did not have probable cause for instituting the proceedings. He knew that John Roman had been in Minneapolis for at least two weeks; that he had returned to Billings about February 6 and was there or on the road leading to Red Lodge at the time this complaint was made; he knew, or at least he believed, that Miss Puutio had been in Red Lodge for a considerable period of time and was then in that city and remained there until after this complaint was filed; he knew, or at least he had every reason to believe, that Miss Puutio and John Roman had not seen each other since John left Red Lodge for Minneapolis. These facts and inferences appear from the defendant's own testimony, as well as from the testimony of other witnesses, and tend, in some degree at least, to show a want of probable cause.

3. It is contended further that there is not any evidence tending to show that defendant was prompted by malice.

Aside from the fact that malice may be inferred from a [6] want of probable cause (*Halladay* v. *State Bank of Fairfield*, 66 Mont. 111, 212 Pac. 861; *Beadle* v. *Harrison*, 58 Mont. 606, 194 Pac. 134), the record discloses that this defendant persisted that Miss Puutio be arrested; that he insisted in including in the complaint the unnecessary opprobrious epithet "prostitute" in describing Miss Puutio; that, although he procured the warrant in ample time to have had it served before Miss Puutio left Red Lodge on the afternoon of February 7, he retained it in his possession so long that it could not be served there, and she was arrested upon her arrival at Billings. Furthermore, although John Roman returned to Red Lodge about 4 P. M. on February 7, before the warrant had been served, defendant made no effort to prevent further proceedings, although he pretended that his purpose was merely to prevent a marriage between Miss Puutio and John

Roman or to prevent them being together. Defendant's wife testified: ''When Mr. Roman came to the house and found that John had come back he intended to withdraw the warrant, but he thought it was too late; the train had already gone out. Mr. Roman went back to work.''

4. Again it is insisted that the county attorney, and not this [7] defendant, was responsible for setting in motion the machinery of the law which resulted in the charge being made, the warrant issued, and Miss Puutio arrested.

Waiving aside every other consideration, the fact remains that in his statement to the county attorney this defendant did not confine himself to reports made to him concerning the character of Miss Puutio and her intentions. He and his daughter, who was with him when he procured the county attorney to draft the complaint, stated to the county attorney that Miss Puutio was a chippy and a whore, and defendant stated that he had detected her in a compromising position with other men. For the purpose of the motion for a directed verdict, these statements are deemed to be false, since they are contradicted directly by the testimony of the plaintiff, ·which is assumed to be true.

In most of the cases which hold that an action for malicious prosecution will not lie where the criminal complaint fails to state a public offense, the courts proceed upon the theory that if a full, fair and truthful statement of the fact has been made to the public prosecutor and a complaint based upon those facts has been made which does not charge an offense, the fault is that of the prosecutor; but we undertake to say that no case can be found which holds that, where false statements are made to induce the prosecutor to act, the complaining party may be permitted to shift the responsibility from his own shoulders.

In 38 C. J. 397, it is said: ''If defendant truthfully states the facts to the prosecuting attorney and he makes a mistake of law in filing an information on the facts stated, defendant cannot be held responsible. *  *  *  If the statement of facts

is false and malicious, defendant will not be relieved from liability in an action for malicious prosecution by reason of the fact that the prosecuting attorney instituting the proceeding was mistaken in believing that the facts stated warranted a prosecution." (See, also, *Dennis* v. *Ryan,* 65 N. Y. 385, 22 Am. Rep. 635.)

The fact that this defendant made such false statements to the county attorney is material also in reflecting upon the subjects—want of probable cause and malice.

5. Finally, it is insisted that plaintiff failed to prove any damages.

The plaintiff's evidence discloses that plaintiff is a virtuous [8] young woman, twenty years of age; that she was arrested and confined in jail for several hours; that her employer was called upon to be responsible for her appearance in court, and that she was compelled to employ counsel to defend her against the charge. It would be a reproach to the law if these facts, in connection with the other necessary elements of an action for malicious prosecution, did not justify an award of damages. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33.) No one could say that plaintiff had not made out a cause for nominal damages at least, and that showing would be sufficient as against the motion for a directed verdict. (*Hall* v. *Advance-Rumely Thresher Co.,* 65 Mont. 566, 212 Pac. 290.)

It is our conclusion that plaintiff made out a *prima facie* case; hence the court erred in directing a verdict in favor of the defendant.

6. Upon the trial of this cause plaintiff anticipated much [9] of the defense pleaded by introducing in her case in chief evidence which was properly rebuttal. After defendant had introduced his evidence, plaintiff sought to rebut some of it, but was prevented upon the theory that, having anticipated the defense in her case in chief, she was obliged to present all of her evidence at that time.

It is a matter largely within the discretion of the trial court whether, under such circumstances, rebuttal evidence should

be permitted (38 Cyc. 1354), but the trial of a lawsuit is not a fencing match between counsel. The purpose is to discover the truth, and, if plaintiff were unable to anticipate every matter which was disclosed by the defense, she should have been permitted to controvert such matters in rebuttal. We think the trial court unduly restricted the plaintiff in presenting her testimony.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.