CLAPP, RESPONDENT, v. LAHOOD, APPELLANT.

(No. 6,044.)

(Submitted February 17, 1927.  Decided March 23, 1927.)

[254 Pac. 866.]

*Malicious Prosecution — Evidence — Admissibility — Want of Probable Cause—Advice of Counsel—Burden of Proof—Instructions—Verdict—What not Excessive.*

Malicious Prosecution—Evidence—Admissibility.

1. In an action for malicious prosecution, the motives which influenced the prosecution may be inferred from subsequent conduct of defendant; hence evidence that after defendant landlord had the plaintiffs, his tenants, arrested for removing a lock on the door of a shop in which were their tools, *etc.*, which he had caused to be attached, he in the night-time entered and removed some of the tools therefrom, was admissible upon the question of malice and as showing a purpose to vex, annoy and injure plaintiffs.

Same—Want of Probable Cause—Slight Evidence Sufficient.

2. To prove want of probable cause for an alleged malicious prosecution is to prove a negative and slight evidence is sufficient for that purpose.

Same—Malice Inferable from Lack of Probable Cause.

3. From lack of probable cause for instituting a criminal prosecution, malice may be inferred.

Same—Defendant Acting on Advice of Counsel—Burden of Proof—Conflicting Evidence—Question for Jury.

4. Where the defense in an action for malicious prosecution is advice of counsel, defendant must prove by a preponderance of the

2.  See 18 R. C. L. 52.
3.  See 18 R. C. L. 30.
4.  See 18 R. C. L. 48.

evidence that in good faith he made to counsel a full, fair and complete statement of all the facts of the matter involving the alleged unlawful act of the plaintiff because of which the prosecution was instituted, and that in good faith he acted upon the advice of counsel in instituting it, and when there is a sharp conflict in the evidence on the subject, the issue whether defendant did or did not make a statement to counsel such as is required must be left to the jury.

Same—Honest Belief of Plaintiff's Guilt—Defense—Defective Instruction.
5. An offered instruction in an action for malicious prosecution that if defendant honestly believed that plaintiff had committed a crime when he instituted the prosecution; such belief negatived the idea of want of probable cause, was properly refused for failure to incorporate therein the idea that the honest belief of defendant was that of a reasonable man.

Same—Verdict—What not Excessive.
6. Held, that a verdict of $1,000 awarded plaintiffs, tenants of defendant and engaged in the garage business, in an action for malicious prosecution charging malicious injury to personal property, to-wit, breaking a lock and door on the premises after their personal property had been attached by defendant, and who had been arrested and confined in jail a few hours, under the circumstances shown by the evidence was not excessive.

[1]  Malicious Prosecution, 38 C. J., sec. 181, p. 492, n. 95.
[2]  Appeal and Error, 4 C. J., sec. 2830, p. 844, n. 68; sec. 2836, p. 856, n. 3.  Malicious Prosecution, 38 C. J., sec. 189, p. 497, n. 60, p. 499, n. 78; sec. 191, p. 501, n. 10; sec. 193, p. 502, n 19.
[3]  Malicious Prosecution, 38 C. J., sec. 68, p. 425, n. 9.
[4]  Malicious Prosecution, 38 C. J., sec. 78, p. 432, n. 88, p. 433, n. 89, 90; sec. 191, p. 501, n. 8; sec. 195, p. 505, n. 32; sec. 198, p. 508, n. 48.
[5]  Malicious Prosecution, 38 C. J., sec. 202, p. 512, n. 9, 23. Trial, 38 Cyc., p. 1711, n. 19.
[6]  Malicious Prosecution, 38 C. J., sec. 103, p. 451, n. 84.

*Appeal from District Court, Madison County; Henry G. Rodgers, Judge.*

ACTION for malicious prosecution by John C. Clapp against Shadan Lahood. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. N. A. Rotering, Mr. John McGough* and *Mr. George R. Allen,* for Appellant, submitted a brief; *Mr. Rotering* and *Mr. Allen* argued the cause orally.

*Mr. Ike E. O. Pace,* for Respondent, submitted a brief and argued the cause orally.

[78 Mont. 551.]

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action in damages for alleged malicious prosecution. Under written lease, plaintiff and his partner, one Armitage, were tenant occupants of a garage building, the property of defendant. They had not long occupied the building. There was much wrangling between landlord and tenants. Evidently, much ill will, both ways, was engendered. Defendant served the tenants with notice to vacate. He sued them for money owing him and attached their personal property. He put on new locks and locked them out of the premises. The tenants removed one of the locks and entered. Defendant filed in justice court a criminal complaint for misdemeanor, charging them with malicious injury to personal property, *viz.,* breaking a lock and door. They were arrested, confined in jail a couple of hours or more, released on bail, tried and acquitted.

Plaintiff, in instituting this action, filed a complaint, in ordinary form, alleging the arrest, incarceration and acquittal; malice, lack of probable cause and damage. Defendant's answer is a general denial. The case was tried with a jury. There was verdict in the sum of $1,000 for plaintiff and judgment accordingly. A motion of defendant for a new trial was overruled. Defendant appealed from the judgment and assigns a number of specifications of error. We shall consider them in what appears appropriate order.

After defendant had had the tenants arrested and incarcerated in jail and while, on that account, they were away from [1] their place of business and while their personal property therein was under attachment, obtained by defendant in his civil action, and while such property was in custody of a keeper, it appears defendant entered the building and removed therefrom a lot of tools, alleged to be the property of the tenants. At least, there was testimony to that effect. This is said to have been done in the nighttime; the night of the day of the arrest of the tenants. In

the trial of the instant case, the keeper was a witness for plaintiff. On direct examination, he was asked what defendant did that night, with respect to the contents of the garage. Counsel for defendant objected to the question, as irrelevant, incompetent and immaterial. The objection was overruled and the witness testified to the conduct of defendant, as above detailed. The ruling is assigned as error.

Being immediately after the arrest and connected with the dispute out of which grew the arrest, we hold the ruling was not error. The evidence adduced was proper, as going to shed light upon the question of malice, the state of feeling of defendant for plaintiff; if there was any purpose to vex, annoy or injure plaintiff. The motives which influence the prosecution may be inferred from subsequent conduct of defendant. (8 Ency. Ev. 406; 38 C. J. 492; *Marks* v. *Hastings,* 101 Ala. 165, 13 South. 297; *Thurston* v. *Wright,* 77 Mich. 96, 43 N. W. 860; *Brown* v. *Riggs,* 123 Mich. 208, 81 N. W. 1079.)

The entry of judgment is assigned as error. It is contended the judgment is not supported by the evidence. We cannot agree with that contention. We hold there was sufficient evidence of lack of probable cause to go to the jury, for its decision. "To prove want of probable cause is to prove a negative and the authorities hold generally that slight evidence is sufficient for that purpose." (*Puutio* v. *Roman,* 76 Mont. 105, 245 Pac. 523.)

Plaintiff and his partner, by virtue of a lease, were legally in possession of the building occupied by them and owned by defendant. The latter served on them a written notice (provided for, under certain circumstances, in the lease) that, at the end of five days thereafter, their lease would terminate, because of forfeiture, and demand that, at the end of the five days, they surrender possession of the premises. Even though the notice were efficacious and potent for its purpose (which we are not deciding), in the temporary absence of the tenants, defendant put two new locks on doors of the building and locked out the tenants, before the expiration of the five days.

He testified that, by phone, he consulted the county attorney about it and acted on his advice.

It appears that Sunday morning, June 1, 1924, plaintiff went away to spend the day with relatives and returned Monday morning. Armitage, his partner, it appears, stayed in charge of the business that day. About noon, Sunday, he carried, by machine, some passengers out in the country and was gone about two hours. During his absence, defendant put on a door of the building one of the new locks and kept the key. When Armitage returned he found himself locked out. Defendant observed him there. Armitage remained out of his place of business the remainder of the day. Early Monday morning, while Armitage was thereabout but not in sight, defendant put another new lock on another door of the building and kept the key and then departed for a neighboring town, there to give attention to his civil suit and attachment.

Soon thereafter plaintiff returned from his Sunday visit and Armitage informed him of being locked out. They then removed one of the new locks, without injury to the door or building, and entered. That, too, was within the five days specified in the notice to vacate. Defendant learned of the act of the tenants and their arrest followed.

Under these circumstances, it is hard to conceive how defendant, as a reasonable man, could claim probable cause to believe plaintiff and his partner guilty of a criminal offense. Defendant may have imagined it but the law requires more than imagination or surmise. He must have known that, at least until the expiration of the five days' time he had allowed them (as provided in the lease) in his notice to vacate, the tenants were entitled, without question, to the possession of the leased premises. They had therein belongings and were conducting there a business. The whole matter was a controversy about rights of property, fit for a civil action. Some portions of defendant's testimony may indicate he had ground for probable cause to believe plaintiff guilty of a criminal act or possibly that inference might be drawn therefrom. Dif-

ferent inferences might be drawn by different people. It was for the jury to say what inferences should be drawn.

Although there is no conflict of evidence about the locking out of the tenants and their re-entrance, by removal of a lock, before the end of the five days given in which to vacate, there is a substantial conflict of evidence on some of the material issues of the case and it was for the jury to decide the issues of fact. It decided them in favor of plaintiff and its decision thereon may not be disturbed. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33.) The jury found there was lack of [3] probable cause and from lack of probable cause malice may be inferred. (*Halladay* v. *State Bank of Fairfield,* 66 Mont. 111, 212 Pac. 861; *Beadle* v. *Harrison,* 58 Mont. 606, 194 Pac. 134; *Grorud* v. *Lossl,* 48 Mont. 274, 136 Pac. 1069; *Martin* v. *Corscadden, supra.*)

The chief defense was advice of counsel. Defendant's own counsel in the attachment suit and other matters, McGough, [4] advised against criminal action. Defendant consulted and acted on the advice of the county attorney.

To be a successful defense, if plaintiff has made a *prima facie* case, it is necessary for defendant to prove by a preponderance of evidence that, in good faith, he made to counsel a full, fair and complete statement of all of the facts of the matter involving the alleged unlawful act of the party complained of and that, in good faith, he acted upon the advice of counsel. (*Halladay* v. *State Bank of Fairfield, supra; Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489; *Martin* v. *Corscadden, supra.*)

There is much conflict of evidence as to whether or not defendant made to the county attorney such a statement. Defendant's testimony as to that is rather vague. Yet, it may be said he claimed substantially to have told the county attorney all the material facts. Much of what he told that official, it appears, was about the numerous squabbles he had had with the tenants, preceding the commission of the alleged criminal

offense and which had nothing to do with the latter. Mr. Reid, the county attorney, in his testimony, in the main, fairly well agreed with defendant as to what the latter had told him but said defendant did not tell him about putting on the building a second lock, Monday morning, June 2, after defendant knew Armitage had returned and was there. The chief dispute as to whether or not defendant made to the county attorney a correct statement of the affair arises from the testimony of plaintiff and Armitage, in which they said a lot of the things defendant told the county attorney were not true; that defendant had misrepresented and falsified things and misled that official. Thus arose a question of veracity, which could only be left to the jury. Clearly, it was for the jury to decide whether or not defendant made to the county attorney such a statement as is required. When there is a sharp conflict on that issue it is proper to leave it to the decision of the jury. (*Cornner* v. *Hamilton, supra; Beadle* v. *Harrison, supra.*)

One factor of consequence is that defendant admittedly told the county attorney, when he was seeking advice about locking up the place, Sunday, June 1, that the tenants had moved out practically everything of theirs (tools, equipment and the like) and gave that official the impression that they had abandoned the place. They, in testifying, denied that and asserted the usual equipment, consisting of a lot of tools and appliances, was there. From the undisputed fact that the next day an attachment was put on a lot of the belongings of the tenants in the building and the testimony of the keeper that, that night, defendant went in and removed a lot of things claimed by the tenants, it would appear it was not true that the place was stripped, the day before, of the belongings of the tenants. It is hardly conceivable that, if everything material, without bias or prejudice, had been told correctly to the county attorney, he would have advised the locking up of the place by defendant or the arrest of the tenants. That, however, was

all for the jury. We hold there is sufficient evidence to support the judgment.

All of the remaining specifications of error relate to the giving or refusal of requested instructions. As to those which assign as error the giving of instructions to which defendant objected, we have carefully examined the instructions objected to and we see nothing incorrect or inapplicable in any of them.

Of those specifications which assign as error the refusal of [5] the court to give proposed instructions requested by defendant, specification numbered 5 claims error in the refusal of the court to give defendant's requested instruction No. "A" (should be No. "B"). The requested instruction is defective, in that it does not incorporate the element of honest belief of a "reasonable" man. It should have been predicated on the honest belief of defendant, as a "reasonable" man. (*Martin* v. *Corscadden, supra,* p. 322.) Hence, the refusal to give the proposed instruction as requested was not error.

A careful examination of the remaining specifications of error, based on the refusal of the court to give proposed instructions requested by defendant, discloses no material or prejudicial error. We have carefully considered and have given due weight to the earnest argument of counsel for defendant, in support of their contentions, and to the authorities cited by them, in that behalf. Practically every one of those requested instructions was fully covered by the instructions given by the court. Some of the requested instructions were almost identical with instructions given by the court. Counsel for defendant call attention to the fact that some of those requested instructions were taken from opinions delivered by this court. Likewise, some of the instructions given on the same subject were substantially taken from opinions of this court. The difference between those requested instructions and those given is not great enough, in our opinion, to constitute reversible error. Some of the requested instructions, too,

we think, were somewhat defective. We hold that the jury was fairly and adequately instructed upon the issues of the case.

Counsel for defendant argue that the damages awarded are excessive. There is no specification of error to that effect. [6] Nevertheless, from a careful perusal of the record, the jury having found the issues of fact for the plaintiff, we cannot say we are convinced the award is excessive. That was a matter for the judgment of the jury and we cannot say it was abused.

We find in the record no prejudicial error and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.