WENDEL, RESPONDENT, *v.* METROPOLITAN LIFE INSURANCE CO., APPELLANT.

(No. 6,336.)

(Submitted October 6, 1928. Decided November 7, 1928.)

[272 Pac. 245.]

254

*Mr. E. C. Day* and *Mr. Carl Rasch,* for Appellant, submitted a brief; *Mr. Rasch* argued the cause orally.

*Messrs. J. Miller Smith, Paul W. Smith* and *David R. Smith,* for Respondent, submitted a brief; *Mr. Paul W. Smith* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action for damages for malicious prosecution. Upon issues being joined, the cause was tried to a jury and resulted in a verdict in plaintiff's favor for the sum of $5,000 against the defendant Metropolitan Life Insurance Company, upon which judgment was duly entered for the amount

thereof. The defendant Metropolitan Life Insurance Company has prosecuted appeal to this court from the judgment. In disposition thereof, in view of the appellant's assignments of alleged errors, we are called upon to consider and determine only the question of the sufficiency of the evidence to sustain the verdict and judgment. The district court denied the defendant's motion for a nonsuit interposed at the conclusion of the plaintiff's case in chief, and, also, motion for a directed verdict at the conclusion of all of the evidence, on account whereof error is by the appellant assigned. There was no motion made for a new trial, and therefore we have examined the record merely to ascertain whether the verdict and judgment are supported by any substantial evidence. (*Clifton, Applegate & Toole* v. *Big Lake Drain District*, 82 Mont. 312, 267 Pac. 207.)

We have carefully read and considered the pleadings and all of the evidence in the case. It appears that on or about the nineteenth day of February, 1926, the defendant J. M. O'Keefe, general agent for the Metropolitan Life Insurance Company in the Great Falls district of the state of Montana, made and filed a complaint on oath in a justice court of the township of Helena, Lewis and Clark county, charging the plaintiff with the crime of grand larceny, as follows: "The said Edward Wendel did on or about the 30th day of October, 1925, at the county of Lewis and Clark, in the State of Montana, wilfully, unlawfully and feloniously appropriate to his own use and benefit one hundred fifty dollars ($150.00) lawful money of the United States, of the personal goods and property of the Metropolitan Life Insurance Company, a corporation organized under the laws of the state of New York, and doing business in the state of Montana, the said defendant at said time and place having come into the possession of said money as bailee, and having collected the same from various persons holding policies of insurance in said Metropolitan Life Insurance Company, contrary to the form, force and effect of the statute in such case made and pro-

vided and against the peace and dignity of the state of Montana. Said complainant therefore prays that a warrant may be issued for the arrest of the said Edward Wendel and that he may be dealt with according to law.''

Upon such complaint the justice of the peace issued a warrant for the plaintiff's arrest, under and by virtue of which the plaintiff was, on or about February 19, 1926, arrested in the city of Butte and imprisoned in the county jail of Silver Bow county for a period of about three hours, after which time he was released, and thereupon proceeded to the city of Helena to respond to the charge, appeared before the justice, entered a plea of not guilty thereto, and was admitted to bail in the sum of $500. The case was then permitted to stand in the justice court without any further action until September 9, 1926, when the defendant moved to dismiss the action for the state's failure diligently to prosecute it as by the law required. On September 30, 1926, the motion was sustained and the case dismissed.

The determinative question is whether there was sufficient probable cause to justify the plaintiff's arrest.

The evidence discloses that the plaintiff worked for the appellant company for a period of about four years. He began as an agent in December, 1921, and continued as such until January, 1925, when he was made assistant district manager of the Helena section of the appellant's business in the Great Falls district. He worked as such assistant manager from the time of his appointment until about November 9, 1925, when he resigned and left the company's employment. As assistant manager he did the necessary office work, collected premiums on insurance policies, and solicited and wrote insurance for the appellant. His contract with the appellant is dated January 9, 1925, and thereby he agreed ''to obey all the rules of the company contained in the Manual and Instruction Book, as the same now are and may hereafter be, and all the rules of the company, however they may be published or communicated.'' The plaintiff thereby further

bound himself to the company in the following language, to-wit: "I further agree that I have no greater or other power or authority than herein set forth; and that my appointment as assistant manager and this agreement, as well as the duties and emoluments thereunder, may be revoked, terminated changed or modified from time to time by the company in its discretion or at its pleasure, with or without cause, without notice and without liability therefor on the part of the company to me. * * * If at any time I resign or am dismissed from the assistant managership, the remuneration above provided, which I have been authorized to receive to that date, shall be in full payment and satisfaction of all of my services to the company and of my compensation under this agreement and of all claims upon the company. Any indebtedness that may now or hereafter be due from me, as shown by the books of the company, shall be a lien upon my salary and any other compensation to which I may be entitled, according to the practice of the company, and shall be deducted from such salary and other compensation according to the pleasure of the company."

The company's Manual of Instructions for managers and assistant managers, governing the plaintiff in his work, in force during the existence of the contract, provided: "First year and renewal commissions are payable only upon collection of the premiums and remittance to the company's Home Office, in the same manner as the premiums are paid—that is, annually, semi-annually or quarterly; and in accordance with the percentages specified on the authorized and printed commission schedule displayed in the District Office."

John M. O'Keefe was the company's district manager, and the plaintiff worked under his supervision. The plaintiff as such assistant manager was required to make a weekly report to the head office at San Francisco, California, of all collections made during the week in the "industrial department" and a weekly report of all collections in the "ordinary department" to the district manager's office in Great Falls.

The assistant manager's weekly reports of premiums collected in the "ordinary department" were made to the district manager's office on Thursday of each week, showing all collections made in that department during the preceding week, and such reports should specify the particular policies, the names of the holders, and the amounts collected. It was required, also, that they should show the policies on which the premiums had not been paid, and that the official receipts therefor be returned to the district manager at Great Falls. In August, 1925, Mr. O'Keefe, district manager, became uneasy because of the report made to him by the plaintiff for the month of July, 1925, resulting in Mr. O'Keefe's coming to Helena to confer with the plaintiff and make an examination of the plaintiff's office, books and records.

Many lapses of policies and arrears in the payment of premiums not reported were found by O'Keefe; and later, upon an audit of the books, collections were found to have been made which were not accounted for. The plaintiff remained in the Helena office during the months of August, September and October and assisted with the audit of his books. As to several items of money collected he agreed they had been collected, though not entered in the books or reported to the company. He left the Helena office and the company's employment on November 9, 1925, and subsequently the complete audit of his books indicated a shortage in his accounts amounting to $148.78, which he admitted to be correct. At the company's direction, O'Keefe conferred with E. C. Day, Esq., the company's attorney at Helena, regarding the case. Mr. Day, after learning the facts as detailed to him by O'Keefe, made an appointment with A. P. Heywood, deputy county attorney of Lewis and Clark county, to meet with Mr. O'Keefe and consider the advisability of instituting a criminal action against the plaintiff. All of the facts in the case appear to have been fully and fairly presented to Mr. Heywood, who thereupon advised that the plaintiff was guilty of the crime of larceny as a bailee. Mr.

Heywood thereupon inquired of Mr. O'Keefe if the latter was authorized to swear to a complaint, and upon being advised that Mr. O'Keefe possessed such authority, drafted a complaint charging the plaintiff with the crime of grand larceny, which was verified by O'Keefe, and resulted in the plaintiff's arrest and detention at Butte as above stated. During the pendency of the proceedings in the justice court, before the cause was dismissed for failure of the state to prosecute it diligently, the plaintiff and his attorney had negotiated a settlement of the affair with E. C. Day, Esq., the company's attorney, whereby the plaintiff agreed to pay the sum of $43 in full satisfaction of the company's demands, after allowing to the plaintiff certain commissions by him claimed on business transacted by him during the course of his employment. The plaintiff had executed his check for $43 in full settlement, but withheld its delivery upon being shown the form of receipt he would be required to execute, relieving the company from all or any liability on account of the criminal prosecution.

After having made a very careful review and study of the evidence, we are of opinion the plaintiff did not make out a prima facie case, and that the court was in error in not granting the motion for a nonsuit made by the defendants at the close of the plaintiff's case. The testimony introduced by the defendants entirely destroyed the plaintiff's case, and indicated the existence of probable cause for making the criminal charge, beyond doubt and without conflict. There was no substantial evidence in support of the plaintiff's complaint to sustain a verdict as a matter of law, and the court should have granted the defendants' motion for a directed verdict.

Upon submission of the case to the jury the court instructed it as to the law applicable to the case, as follows:

"You are instructed that probable cause for the commencement of a criminal prosecution means a reasonable ground for suspicion, supported by circumstances sufficiently strong

in themselves to warrant a reasonably prudent and cautious person to believe that the accused is guilty of the offense charged. * * * You are further instructed, as a matter of law, that the presence or absence of probable cause does not depend upon the guilt or innocence of the person accused, or upon the fact whether or not a crime has actually been committed. If a person acts upon appearance in making a criminal charge, and the apparent facts are such as to lead an ordinarily prudent and careful person to believe that a crime has been committed by the party charged, although it turns out that he was mistaken and the party was innocent of the commission of a crime, he is justified in making the complaint. And if you believe from the evidence in this case that upon the facts and circumstances of the case as the defendant O'Keefe knew or understood them to be at the time he made the complaint in said justice's court, the said O'Keefe acting as a reasonable man honestly believed that the offense charged against the plaintiff in said complaint had been committed by said plaintiff, then the plaintiff cannot recover and your verdict should be for the defendant.''

These instructions, whether right or wrong, stated the law ▆ applicable to the case, and should have been followed by the jury in arriving at a verdict. However, in our opinion, the law of the case was correctly given to the jury, and, viewing all of the evidence in light most favorable to the plaintiff's case, it is manifest that the verdict and judgment cannot be upheld. The plaintiff's own evidence not only failed to establish want of probable cause for the prosecution, but clearly established the existence thereof.

An indispensable element of an action for malicious prosecution is want of probable cause. The very foundation of the action is that the previous legal proceeding was pursued causelessly; and where it appears that there was probable cause to institute the proceeding, such fact constitutes a complete defense to the action. (38 C. J., pp. 398–400.) ''The action for malicious prosecution is not favored in

law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime." (18 R. C. L., p. 11; *Watts* v. *Gerking*, 111 Or. 641, 34 A. L. R. 1489, 228 Pac. 135.)

Public policy favors prosecution for crimes committed, and ▉ requires that a citizen who, in good faith and upon reasonable grounds causes the institution of criminal proceedings, shall be protected. Were it otherwise, many crimes would go unpunished through fear of persons, possessing knowledge of facts upon which to base probable cause of the commission of an offense, that they might be compelled to respond in damages, should a criminal action instituted not result in conviction of the person accused. Every citizen has the right to insist upon the enforcement of the law, and where without malice, all feel free to put the criminal law in motion upon facts warranting a belief that a crime has been committed, society is benefited immeasurably. (*Stange* v. *Esval*, 67 Mont. 301, 215 Pac. 807.) Therefore, in actions for malicious prosecutions, the real controversy is, generally, ▉▉ upon the question of malice and want of probable cause. The burden of proving these essential elements rests upon the plaintiff, and whether there was a want of probable cause is purely a question of law. (Newell on Malicious Prosecution, p. 267.)

As was correctly stated by the learned trial judge in his charge to the jury: "Probable cause for the commencement of a criminal action means a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent and cautious person to believe that the accused is guilty of the offense charged." (38

264

C. J., p. 403; *Cornner* v. *Hamilton*, 62 Mont. 239, 204 Pac. 489.)

And the trial court further correctly instructed that it does not depend upon the guilt or innocence of the accused. (18 R. C. L., p. 36.)

The burden rests upon the plaintiff in an action for damages for malicious prosecution to prove both malice and want of probable cause, though malice may be presumed from a want of probable cause. (*Weaver* v. *Montana Cent. Ry. Co.*, 20 Mont. 163, 50 Pac. 414; *Martin* v. *Corscadden*, 34 Mont. 308, 86 Pac. 33; *Beadle* v. *Harrison*, 58 Mont. 606, 194 Pac. 134; *Cornner* v. *Hamilton*, supra; *Halladay* v. *State Bank*, 66 Mont. 111, 212 Pac. 861; *Puutio* v. *Roman*, 76 Mont. 105, 245 Pac. 523.) Here the plaintiff wholly failed to sustain the burden of proof imposed upon him. He wholly failed to establish the basis of his action as a condition precedent for recovery, as by the law required. He failed to establish a prima facie case, showing a want of probable cause—the very foundation of the action—and the evidence introduced by the defendants, and by the plaintiff in rebuttal, did not improve the plaintiff's position.

Accordingly, the question of whether the defendants had or had not probable cause for instituting the proceeding must be determined as one of law upon the uncontroverted facts. (16 Cal. Jur., p. 751; *Ryan* v. *Johnson*, 52 Mont. 100, 155 Pac. 971.) So considered, the plaintiff is without right of recovery.

As the case appears to have been fully and fairly tried, with all of the facts presented to the court and jury, and no useful purpose would be accomplished by a retrial, the judgment is reversed, and the cause remanded, with direction to dismiss the plaintiff's complaint.

*Reversed and remanded.*

ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.

ON MOTION FOR REHEARING.

## OPINION: PER CURIAM.

On motion for a rehearing we have again carefully considered all of the evidence in the case, and feel amply justified in our decision. The burden of proving want of probable cause rested on the plaintiff; yet, from his own testimony in his case in chief, probable cause was sufficiently shown entirely to destroy his right of action. A most casual reference to the facts in the case of *Puutio* v. *Roman*, 76 Mont. 105, 245 Pac. 523, relied upon by the plaintiff, will easily differentiate that case from this one. There the defendant by his evidence established want of probable cause for the plaintiff's arrest, while here the plaintiff, upon whom rested the burden of proof, by his own testimony in support of his complaint, clearly demonstrated that probable cause for his arrest existed. The motion is denied.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.