RICKMAN, RESPONDENT, v. SAFEWAY STORES, INC., ET AL., APPELLANTS.

No. 8998.

Submitted October 14, 1950. Decided January 9, 1951.

227 Pac. (2d) 607.

452

Mr. T. J. Davis, Mr. L. C. Myers, and Mr. George P. Sarsfield, Butte, for appellants.

Mr. Horace J. Dwyer, Anaconda, for respondent.

MR. JUSTICE FREEBOURN:

This action is one for malicious prosecution wherein plaintiff, Alice Rickman, secured verdict and judgment against the defendant, Safeway Stores, Inc., a corporation. The action was dismissed as to the defendant, Daly Bank & Trust Company of Anaconda, a corporation, on plaintiff's motion at the close of plaintiff's case in chief.

Plaintiff, in her complaint alleged: That the defendants, on September 29, 1948, at the city of Anaconda, in Deer Lodge county, Montana, maliciously and without probable cause, procured and caused a criminal complaint to be filed in the justice court of East Anaconda township, charging plaintiff with the crime of "uttering a fraudulent check," resulting in the issuing of a warrant of arrest for plaintiff and her arrest thereunder by a constable, who took her before a justice of the peace; that the criminal complaint was then dismissed; that plaintiff suffered injury therefrom; and asked that plaintiff be awarded actual damages and damages by way of punishment and example.

General demurrers by all defendants were overruled and they answered separately.

Answers of the corporate defendants consisted of admissions of corporate capacity and denials of other allegations of the complaint.

Answer of defendant, Mary A. Milkovich: Admitted the filing of the criminal complaint and issuance of the warrant of arrest; denied other allegations of the complaint and alleged a separate defense wherein it was alleged: she was "well and truly acquainted with Alice Rickman, the plaintiff," who bought

groceries from defendant, a clerk and employee of Safeway Stores; that plaintiff gave in payment for such groceries a check which was returned by the defendant bank after presentation for collection, accompanied by the statement there "was no account in the bank in the name of Alice Rickman;" that believing such fact to be true defendant went to the county attorney's office and "gave a full and complete statement of all the facts of the case" to and was advised by the county attorney "to sign and file a complaint against the said Alice Rickman;" that "the said complaint was prepared and signed by this defendant, Mary A. Milkovich;" that she had just cause and reasonable grounds for believing plaintiff guilty of the crime charged and acted in good faith and without malice.

The allegations of this defense were placed in issue by plaintiff's reply.

The trial jury's verdict was in plaintiff's favor and against the defendant, Safeway Stores, Inc., awarding plaintiff actual damages in the sum of $2,000 and damages by way of punishment and example in the sum of $1,000.

Motion for new trial was denied and this appeal followed.

Plaintiff's case in chief disclosed that plaintiff, as Alice Rickman, and Fred F. Hites (husband and wife at the time of trial, December 9, 1949) opened a joint account with the defendant bank on July 21, 1948. This account was in existence and had a cash balance of $274.68 on September 10, 1948. Money could be withdrawn from this account by check signed by Alice Rickman or Fred F. Hites.

On September 10, 1948, Alice Rickman delivered her check for $15, payable to Safeway Stores, to Mary A. Milkovich, Safeway Stores clerk, in payment for groceries. The check was good as shown by bank records.

For a year prior to the giving of the check, Alice Rickman and Fred F. Hites had been customers of the Safeway Stores. They customarily visited the store on Mondays, where Hites would cash his weekly check and groceries would be purchased.

On October 1, 1948, plaintiff was arrested on a warrant issued in a judicial proceeding in a justice court. Such proceeding was instituted on September 28, 1948, by the filing of a criminal complaint signed by the Safeway Store employee, Mary A. Milkovich. The criminal complaint charged Alice Rickman with being guilty ''of the crime of 'uttering a fraudulent check','' in that she did on September 10, 1948, ''with intent to defraud Safeway Stores, Inc., make, and draw and utter and deliver a check in the amount of Fifteen and no/100 ($15.00) Dollars on the Daly Bank and Trust Company of Anaconda, Anaconda, Montana, knowing at the time of such making, drawing, uttering and delivering that she had not sufficient funds in, or credit with such bank for the payment of such check, a misdemeanor * * *''

Taken before the justice of the peace plaintiff pleaded not guilty. Later the proceedings were dismissed and plaintiff released.

Evidence of damage to plaintiff from the institution of such justice court proceedings was introduced.

General demurrers of defendants, Safeway Stores, Inc., a corporation, and Mary A. Milkovich, to the complaint were properly overruled. The complaint stated a cause of action for, and plaintiff's evidence made a *prima facie* case of malicious prosecution.

The complaint alleged and the evidence tended to prove: (a) That a judicial proceeding was commenced and prosecuted against plaintiff; (b) that the defendants, Safeway Stores, Inc., and Mary A. Milkovich, were responsible for instigating such proceeding; (c) that there was want of probable cause for defendant's action; (d) that defendants were actuated by malice; (e) that the proceedings terminated favorably to plaintiff; and (f) that plaintiff suffered damage. Stephens v. Conley, 48 Mont. 352, 138 Pac. 189; Johnson v. Horn, 86 Mont. 314, 283 Pac. 427; and Cornner v. Hamilton, 62 Mont. 239, 204 Pac. 489.

Plaintiff, innocent of any wrong, had been charged with the

crime of passing a worthless check, although the check was good, with ample funds in the.bank to cover it. No. justification existed for filing such criminal charge. Probable cause, or such a state of facts and circumstances. as would lead a careful and conscientious man to believe that plaintiff was guilty, was lacking.

"All the books agree that the plaintiff must prove both want ▮▮▮▮▮ of probable cause and malice, and that, where the absence of the former is established, the presence of the latter may be inferred. In other words, when the proof tends to show the absence of the former, a *prima facie* case is made for the jury. The burden then rests upon the defendant to rebut this *prima facie* case; and this he must do by any evidence tending to show the existence of probable cause and the want of malice on his part. Probable cause, however, is not to be confounded with actual guilt. The latter must always be established by proof beyond a reasonable doubt, while 'probable cause is only such a state of facts and circumstances as would lead a careful and conscientious man. to believe that the plaintiff was guilty.' Barron v. Mason, 31 Vt. 189." Martin v. Corscadden, 34 Mont. 308, 86 Pac. 33, 36; Grorud .v. Lossl et al., 48 Mont. 274, 136 Pac. 1069; Saner v. Bowker, 69 Mont. 463, 222 Pac. 1056; Cornner v. Hamilton, supra; and Puutio v. Roman, 76 Mont. 105, 245 Pac. 523.

The filing of such criminal charge was a wrongful act which ▮▮▮▮▮ would not only vex and annoy plaintiff but did injure her. It was a malicious act. "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." R. C. M. 1947, sec. 19-103, subd. 18.

The institution of such criminal prosecution was voluntary on the part of Mrs. Milkovich. She intended, by so doing, to vex, annoy and injure plaintiff; for the law presumes "That a person intends the ordinary consequence of his voluntary act." R. C. M. 1947, sec. 93-1301-7, subd. 3.

Corporations, of necessity, act through individuals. Mary A.

 Milkovich, employee of Safeway Stores, wrote in the body of the check, witnessed plaintiff sign it approved and accepted it upon her own responsibility. She gave Safeway Store groceries and cash for the check. She knew plaintiff and could identify her. She could give the authorities all the facts pertaining to the check transaction. Mrs. Milkovich would be the principal witness against plaintiff in a criminal prosecution and was the logical person to sign the criminal complaint on behalf of Safeway Stores. Her action was the action of Safeway Stores.

The facts and circumstances made a case warranting the conclusion that the prosecution was commenced on behalf of Safeway Stores, through its employee and agent, Mrs. Milkovich, acting within the apparent scope of her authority.

The rule is laid down in Grorud v. Lossl, supra [48 Mont. 274, 136 Pac. 1071], where this court said: "It is settled law that an action for malicious prosecution will lie against a corporation as well as against a natural person. (Citing cases.) By the great weight of authority it is also the rule that when an agent of a corporation in the course of the discharge of duties intrusted to him by it, and within the apparent scope of his authority, does an act from which a third person suffers injury, the corporation also is liable for the damages flowing therefrom, even though the agent may have failed in his duty to the principal, or may have disobeyed his instructions. (Citing cases.) If the act is prompted by fraudulent or malicious motives, the fraud or malice of the agent is imputable to the corporation." See also, 54 C. J. S., Malicious Prosecution, sec. 64, p. 1032.

Defendants' evidence showed that the $15 check, signed by Alice Rickman, was returned to Safeway Stores by the bank, with a notation indicating she had no account in such bank.

At this time neither Mrs. Milkovich nor the store manager, Mr. Walters, appeared to believe plaintiff guilty of any wrong connected with the check. No complaint was then made to the county attorney or other authority. Three weeks elapsed before any action was taken. Mrs. Milkovich testified: "I took the respon-

sibility of knowing these people [Alice Rickman and Fred F. Hites], they having come there for over a year. * * * I told him [the store manager] I would watch for her from that time and I would approach her and tell her the check came back and was no good. I did; just about three weeks I waited for her to come in * * *"

Plaintiff testified she was in the store several times during this period.

Then Mrs. Milkovich and the store manager, separately, made one trip to an address where they believed plaintiff lived. They did not find plaintiff. The store manager's express purpose in making his trip was, as he said, "to collect the money."

No effort was made to contact plaintiff by mail. The bank was not called upon to verify its notification that plaintiff had no account. No attempt was made to locate Hites although Mrs. Milkovich knew he worked for the Anaconda Copper Company and she believed plaintiff and Hites were husband and wife. Mrs. Milkovich's testimony was:

"Q. Did you, or anybody under the direction, or anybody you know at all, in connection with the Safeway Store, ever call the A. C. M. Company to see if Mr. Hites was still working? A. No.

"Q. But you did know he had worked there? A. Yes, but I never did inquire." She said further: "I have waited on both Miss Rickman and Mr. Hites for nearly a period of a year. * * * I always presumed they were husband and wife. I did know Mr. Hites' name because he used to cash his check every Monday; * * * his pay check * * * from A. C. M. Company."

With all of the evidence in, it appeared, even though the bank had indicated the check was not good, that reasonable investigation on the part of the store clerk and manager, with the knowledge they had, would have disclosed the check was good. Such investigation was not made.

"The failure of a person who has received information tending to show the commission of a crime to make such further

inquiry or investigation as an ordinarily prudent man would have made in the same circumstances, before instigating a proceeding, renders him liable for proceeding without probable cause." 34 Am. Jur., Malicious Prosecution, sec. 51, p. 735. See note in 5 A. L. R., p. 1688, citing Federal, California, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Missouri, Nebraska, New York, Ohio and Pennsylvania cases.

After the unsuccessful trips to locate plaintiff by herself and the store manager, Mrs. Milkovich went to the county attorney's office. Her purpose in going was the same as motivated the store manager in seeking plaintiff, to "collect that money." As she put it, while on the witness stand, to secure "a warrant— a complaint, so that I could collect that money."

"If one makes use of the criminal law for some collateral or private purpose and not to vindicate the law, such proceeding will be considered malicious, and this principle has been held applicable where it is shown that the sole purpose of the prosecution is to enforce the payment of a debt * * *." 54 C. J. S., Malicious Prosecution, sec. 42, p. 1006.

"So also, malice in a criminal prosecution exists where the prosecution was actuated by any improper motive—that is, by any motive other than that of bringing the accused to justice." 34 Am. Jur., Malicious Prosecution, sec. 45, p. 729.

The collection of the money was to be made for Safeway Stores. Although Mrs. Milkovich's answer alleged she told plaintiff when the check was accepted she "would guarantee payment of the same to her employer, Safeway Stores, Inc.," the record is barren of any evidence supporting such allegation. There is no evidence the amount of the check was withheld from her wages or that she was compelled or was expected to make the amount of the check good. Her actions and words did not indicate she was collecting her own money.

These facts, with other hereinbefore set forth, were sufficient to justify the conclusion that in commencing the criminal

prosecution, Mrs.. Milkovich was acting within her authority solely on behalf of Safeway Stores.

Since the evidence, as a whole, disclosed the criminal complaint was signed and plaintiff was prosecuted without probable cause and maliciously, motions of defendants Mrs. Milkovich and Safeway Stores for directed verdicts were properly denied.

The defense that the criminal prosecution was instituted upon the advice of the county attorney was not supported by evidence. He did not advise Mrs. Milkovich in the matter. When asked if she had talked to the county attorney, Mrs. Milkovich's answer was "No." Further testimony on her part was:

"Q. And did he ever advise you at all on this matter? A. No. I didn't get to see him, so I explained everything to Miss Finnegan [county attorney's stenographer] and asked her if she would fix the warrant-complaint so that I could collect that money."

Mr. Ruane, the county attorney, testified: "My secretary, Miss Finnegan, came into the office. * * * She stated that Miss Milkovich had informed her one Alice Rickman had given the check to Safeway, that the check had come back from the bank, indicating there was no account. Upon that information and viewing the check, I instructed her to prepare the complaint."

Appellant, asserting the record affirmatively, establishes that Mary A. Milkovich was not authorized to sign the criminal complaint, contends there was no ratification of her acts as would impute malice to the defendant corporation. Jones v. Shannon, 55 Mont. 225, 175 Pac. 882, 885, is cited in support of this contention. In that case the defendant sought to be bound by the act of another was an individual, not a corporation. The court, recognizing this difference, said: "It is true that we held in the case of Grorud v. Lossl, 48 Mont. 274, 136 Pac. 1069, that the malicious motives of an officer of a corporation while acting in its behalf are imputable to the corporation. We also held in the case of Burles v. Oregon Short Line Ry. Co., 49 Mont. 129, 140 Pac. 513, Ann. Cas. 1916A, 873, that a corporation is liable in

exemplary damages for the willful and malicious acts of one of its servants. A corporation, however, is an artificial person, and can only act through agents; and if the malignant motives of the agent are not imputable to it, it would necessarily follow that it could not be held liable for the malicious acts of its agents in any case. The corporation cannot, as a natural person, participate in any maliciously wrongful act, and it is not to be supposed that the board of directors—the executive body of the corporation—would by a formal resolution authorize such an act or by the same method ratify it. In the Grorud Case, the president of a corporation had instituted a baseless criminal prosecution against the plaintiff for the alleged theft of money of the corporation. If the malice of the president could not be imputed to the corporation, it could not have been held liable at all, and the only recourse of the plaintiff would have been against the president. In that case the question of exemplary damages did not arise.

"In the case of Burles v. Oregon Short Line Ry. Co., however, it was distinctly held that, where the act of the servant was prompted by a willful disregard of the rights of the plaintiff, his motive was properly imputable to the company. A natural person can act for himself, and therefore the malignant motive of another should not be imputed to him unless, under the rule of the cases cited above, he directly or indirectly authorized or subsequently ratified the wrongful act. It seems to us that, whatever may be assigned as the foundation for it, a clear distinction is to be recognized between a corporation and a natural person, when we come to fix responsibility for the acts of their agents.''

The collection of the money was a common purpose, as shown by the evidence of both Mrs. Milkovich and the store manager. He gave Mrs. Milkovich the check on which the criminal complaint was based to take to the county attorney's office. He did not object to Mrs. Milkovich waiting until plaintiff came into the store to contact plaintiff about the check. He knew all the

facts. He did not discharge Mrs. Milkovich. It was made clear by defendant's evidence that, although she had left Safeway Store's service between the time of the criminal proceedings and the trial of this cause, such leaving was of her own volition. He did not reprimand her for filing the criminal complaint. She filed the complaint to collect the money. The store manager collected it, collected it after the criminal proceedings were dismissed.

These facts show ratification of Mrs. Milkovich's acts sufficient to make Safeway Stores liable for actual and punitive damages, even though it be said that Mrs. Milkovich was without the scope and authority of her employment when she instituted the criminal proceedings. See, 15 Am. Jur., sec. 288, p. 730; sec. 289, p. 731; and sec. 292, pp. 734 and 735.

Appellant's contention that the dismissal of the criminal proceedings resulted from a compromise whereby plaintiff redeemed the check as a consideration for such dismissal is not borne out by the evidence. It appears that when plaintiff was arraigned before Justice of the Peace Sestrick, she said the check was good and offered her bank book showing a balance in her account. The justice of the peace relayed such facts to the county attorney, who, after contacting the bank, told the justice to "dismiss that criminal complaint against the lady, as the money is on deposit at the bank."

"Q. What did you do then, Judge Sestrick? A. I dismissed the case against Miss Rickman upon the request of county attorney Ruane * * *

"Q. It was completely dismissed? A. That's right; it was dismissed." The dismissal was on October 1, 1948. The $15 was paid to the manager for the check on October 10, 1948. According to plaintiff this was done because Judge Sestrick advised, "Better pay it and keep the check for evidence." This she did.

The court did not err in giving instruction No. 6 to the jury. It was a correct statement of the law on the facts existing in the

case. That it, as appellant puts it, "overlooks the question of course of employment on the part of Mary A. Milkovich," did not vitiate it. Such question was covered by instruction No. 14, given by the court. Appellant requested no other instruction covering this phase of the law.

We have carefully examined all other assignments of error and find no merit in them. The jury was fairly instructed and the case well tried by the court and counsel on both sides.

■ The verdict for plaintiff was not excessive.·

As said in Fauver v. Wilkoske, 123 Mont. 228, 211 Pac. ■ (2d) 420, 423, quoting from Cornner v. Hamilton, supra, " 'It was proper for the court to instruct the jury in this case on the subject of the allowance of the exemplary damages, and proper for the jury, under the evidence, to allow the same (citing cases), and in this class of cases it is wholly within the province of the jury to fix the amount of damages to be awarded compensatory, as well as exemplary; and, unless its determination appears to have been influenced by passion, prejudice, or some improper motive, or unless the amount is outrageously disproportionate, either to the wrong done or the situation or circumstances of the parties, the court will not generally interfere with the verdict'."

The motion for a new trial was properly denied. For the reasons stated, judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN, BOTTOMLY and METCALF, concur.

Rehearing denied March 1st, 1951.