No. 13281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

THE STATE OF MONTANA,

Applicant and Relator,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT, and the HON. CHARLES
LUEDKE,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Anderson, Symmes, Forbes, Peete & Brown, Billings,
Montana
James L. Jones argued, Billings, Montana
J. Michael Young argued, Helena, Montana

For Respondents:

Keefer and Roybal, Billings, Montana
Neil S. Keefer argued, Billings, Montana
Cate, Lynaugh, Fitzgerald and Huss, Billings,
Montana
George Huss argued, Billings, Montana

---

Submitted: March 17, 1976

Decided: MAY 12 1976

Filed: MAY 12 1976

Thomas Jr. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This case is before the Court on an application for a remedial writ filed by the State of Montana to prohibit further proceedings in the thirteenth judicial district court in Cause No. 65626, Azure v. City of Billings and State of Montana. The basic issue raised in this proceeding concerns the liability of a city and the state for the negligent acts of city police officers in view of Art. II, §18, 1972 Montana Constitution and the Montana Comprehensive State Insurance Plan and Tort Claims Act, section 82-4301 et seq., R.C.M. 1947 (hereinafter called Tort Claims Act).

The plaintiff in No. 65626, Jeffrey Azure, was injured in 1974 when beaten in a bar in the City of Billings. For some time following the beating he wandered aimlessly along the streets of Billings in what appeared to be a drunken stupor. A local resident observed Azure acting suspiciously and called the Billings police department. Two officers arrived at the scene and arrested Azure on a charge of drunkenness. Azure was booked into the city jail and held there for approximately sixteen hours before being taken to a local hospital for treatment. The plaintiff alleges he suffered serious and permanent brain damage as a result of the beating and failure of the City police officers to take him to a hospital for medical care.

Prior to commencing this lawsuit, Azure filed a tort claim with the City. When no action was taken within sixty days, he filed this suit against the City. Thereafter Azure filed a tort claim against the State of Montana "to place the State of Montana on notice of this claim in the event that the doctrine stated in Kingfisher v. City of Forsyth, 132 Mont. 39, 45, 314 P.2d 876 (1957) is still viable." More than sixty days following, plaintiff filed an amended complaint adding the State as a

defendant.

Substantial discovery was undertaken, including the taking of a deposition from the chief of police of the City. The State moved to be dismissed and the City moved for summary judgment. Azure resisted both motions, contending that both the City and State are liable. The State contended that the City is vicariously liable for the acts of its employees, and that no master-servant relationship exists between the State and members of the Billings Police Department. The City contended that police officers of municipal corporations are agents of the State and not of the City and that only the State can be liable under the doctrine of respondeat superior. The latter argument is based on our holdings in Kingfisher and a later supporting decision, Boettger v. Emp. Liability Assur. Corp., 158 Mont. 258, 262, 490 P.2d 717. On January 16, 1976, the district court granted the City's motion for summary judgment in its favor and denied the State's motion to dismiss.

Plaintiff Azure appealed from the decision holding the City not liable. The State applied to this Court for relief in order to establish its freedom from liability and obviate its defense in the main action. On February 24, 1976, we entered an order accepting jurisdiction, consolidating this original proceeding with the pending appeal, and staying further proceedings in the district court.

The issues presented are:

1. May the City of Billings be held liable for the negligent acts of police officers employed by it?

2. May the State of Montana be held liable for the negligent acts of police officers employed by Montana municipalities?

The arguments of all parties focus on two areas: the vitality of the Kingfisher and Boettger decisions as they relate

to municipal liability for police conduct; and the abrogation in Montana of the doctrine of sovereign immunity through the 1972 Montana Constitution and the Tort Claims Act.

Kingfisher, decided in 1957, stands for the position long adhered to by the courts and legislature of this state prior to 1972 that the sovereign was immune from suit in the absence of its consent to be sued. In an action against a city and its policeman for wrongful death, it was held that city police functions were "governmental" functions ordained by and for the benefit of the state at large. Therefore, " * * * a city policeman in enforcing city ordinances is acting as an agent of the state, and * * * the city is therefore not responsible in damages for his conduct."

Taking the "agency" factor one step further, this Court stated in Boettger:

> "Our decision in Kingfisher is not bottomed on the principle of sovereign immunity at all; on the contrary it rests on the absence of a principal-agent relationship between the city and the policemen, thereby rendering the doctrine of respondeat superior inapplicable."

The Court affirmed the dismissal of a city and its mayor and councilmen from a wrongful death action "because the necessary element of agency is lacking."

Subsequent to these cases the 1972 Montana Constitution was ratified. Art. II, §18 states in relevant part:

> "The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property * * *."

The Tort Claims Act of 1973 implements the quoted Constitutional provision. "Governmental entities" are defined to include, among other things, cities and municipal corporations. Section 82-4302(2) and (3), R.C.M. 1947.

Section 82-4310 states:

"Every governmental entity is subject to

liability for its torts and those of its employees
acting within the scope of their employment or
duties whether arising out of a governmental
or proprietary function."

Section 82-4302(4) defines "Employee" as:

" * * * an officer, employee, or servant of a
governmental entity, including elected or appointed
officials, and persons acting on behalf of the
governmental entity in any official capacity
temporarily or permanently in the service of the
governmental entity whether with or without com-
pensation * * *."

Clearly Art. II, §18, and the Tort Claims Act are direct

overrulings by the people and the legislature, respectively, of

our holdings in Kingfisher and Boettger.

Notwithstanding the interpretation advanced in Boettger,

Kingfisher is a sovereign immunity case as evidenced by its

classic distinction between "governmental" and "proprietary"

functions, Kingfisher at 44 and cases cited; see Prosser on Torts

4th ed. 1971, §131, pp. 977-87. This artificial distinction has

been expressly abrogated by the last clause of section 82-4310.

As for the "absence of a principal-agent relationship be-

tween the city and the policemen", as stated in Boettger, the

definition of "employee" in section 82-4302(4) makes such an

assertion untenable. In addition, reference to the Metropolitan

Police Law, section 11-1801 et seq., R.C.M. 1947, makes it

abundantly clear that the principals of municipal government are

in direct control of municipal police departments. The deposition

taken of the Billings chief of police establishes several of the

facets of a principal-agent relationship, or more accurately a

master-servant relationship, between the City and the policemen.

The most significant factor in this regard is that the City has

the exclusive power to hire and fire its police officers. See

53 Am Jur 2d, Master and Servant, §2. The power in the City to

control its policemen in both broad and detailed affairs related

to their work brings the policemen squarely within the definition

- 5 -

of "employee" and subjects the City to liability under the terms of Section 82-4310 for torts of its employees " * * * acting within the scope of their employment or duties * * *."

While the police officers are the servants of the City, it cannot be said that they are servants or agents of the State. The State exercises no direct, detailed or daily supervision over City policemen; it is powerless to avoid or prevent negligent acts by them. It cannot pay, hire or fire City policemen, and it does not provide police services for the City. In short, the State does not control the activities of City police officers and cannot be held responsible for their negligence.

Furthermore, the scheme of the Tort Claims Act reveals the legislative intent to make cities and other political subdivisions responsible and liable for the negligence of their employees, rather than the State. Section 82-4303 provides for state purchase of insurance to cover the exposures created by the 1972 Constitution. Section 82-4306 extends to all political subdivisions the same authority to procure insurance. Section 82-4309 authorizes political subdivisions to levy taxes to pay the premiums for such insurance. Section 82-4318 allows the governing body of each political subdivision to compromise and settle any claim filed against it. Section 82-4326 authorizes political subdivisions to levy and collect taxes at the earliest possible time to pay a claim for which there is no insurance or other fund available. It is clear that political subdivisions such as the City are financially responsible, to the exclusion of the State, for the conduct of their employees.

In summary, we hold that the City may be held liable for the negligence of its police officers and the State is not responsible for the conduct of City police acting within the scope of their employment. Kingfisher and Boettger no longer

- 6 -

represent the law in Montana with respect to municipal liability for police conduct because of the adoption of the 1972 Constitution and the Tort Claims Act. We express no opinion on the ultimate liability of the City under the facts of this case as this must await further proceedings.

The district court erred in granting the City's motion and denying the State's motion. These rulings are vacated. The motion of the City of Billings for summary judgment is denied, and the State's motion to dismiss is granted in Cause No. 65626 in the district court.

_____
Justice

We concur:

_____

_____

_____
Justices

_____
Hon. Jack Shanstrom, district
judge, sitting in place of Mr.
Chief Justice James T. Harrison.