JOHN ORSER ET AL., PLAINTIFFS AND APPELLANTS, *v.* STATE OF
MONTANA ET AL., DEFENDANTS AND RESPONDENTS.

No. 13981.
Submitted June 8, 1978.
Decided Aug. 9., 1978.
582 P.2d 1227.

128

H. James Oleson argued, Kalispell, for plaintiffs and appellants.

Anderson, Symmen, Brown, Gerbase, Cebull & Jones, Billings, Richard F. Cebull argued, Billings, for defendants and respondents.

MR. JUSTICE DALY delivered the opinion of the Court.

This is an action 'for malicious prosecution brought by John Orser and Charles Tecca against three state game wardens, the Montana Fish and Game Commission, and the State of Montana. The District Court, Park County, granted defendants' motion for a

directed verdict and dismissed the case against them. Plaintiffs' motion for rehearing was denied, and they bring this appeal.

On the afternoon of February 11, 1975, two state game wardens, Gary Ordish and Randy Smith, were in their quarters at the Blanding Station near Gardiner, Montana. At approximately 5:30 p.m. a local rancher, William Hoppe, informed them of a shooting disturbance near his home, a short distance from the station. Hoppe told them that while he was feeding his cattle a few minutes earlier he heard some snow machines start up and saw two go past his place. Shortly thereafter, he heard several shots, followed by a herd of elk running towards his meadow over the hill which then separated his home from the snow machines. After the shooting, Hoppe saw the snow machines return in the direction from where they came. They carried two men and a boy, and Hoppe could see that the riders had rifles with them. He immediately left his haystack and reported the incident at the Blanding Station. He told the wardens there that the snow machines had proceeded "back toward John Orser's house".

The wardens went to the Orser property and there saw Orser, his son, and momentarily, Charles Tecca, who went into a shed as the wardens' vehicle approached. Warden Ordish introduced himself to Orser and asked if Orser had been on the snow machines which were parked in his yard. Orser replied that they had been cutting wood. He asked Orser if he had done any shooting that afternoon, which Orser denied. Ordish walked past a Toyota belonging to Tecca and noticed an empty gun case lying in the back.

Ordish and Smith then left the Orser residence and proceeded toward a vantage point from which they could observe Orser's driveway. After 30 to 45 minutes, having seen nothing unusual, they returned to their regular work of checking for nighttime poaching.

On the following afternoon, February 12, William Hoppe again contacted the wardens, telling them that he had gone over the hill over which the elk had run the previous afternoon. There he had discovered three freshly killed elk and one blood trail. Ordish and

Smith went to the scene of the dead elk and found three carcasses still unfrozen in the snow. They confirmed that all three had been shot through their right sides as they proceeded up a hill. Walking back toward where the shots would have come from, they encountered a fresh snow machine track. Following the track back to its origin, they arrived in Orser's yard. Warden Ordish asked Orser to talk with him about the dead elk, but Orser refused, informed the wardens that they were trespassing, and told them if they wanted him, they would have to get a warrant for his arrest.

That evening Ordish and Smith, accompanied by Henry Fabich, also a game warden, located Charles Tecca at a meeting of the Sportsmen's Club in Livingston, Montana. After the meeting and following some questioning, the wardens issued a ticket to Tecca for violation of section 26-307, R.C.M. 1947, killing and abandoning a game animal during a closed season. The next day Smith returned to the Orser home and issued a ticket to John Orser on the same charge.

Orser and Tecca were tried on the charges in Justice Court in Livingston on March 14, 1975, and acquitted by a jury. On these facts the plaintiff-appellants brought their suit for malicious prosecution, alleging that the charges against them were brought maliciously and without probable cause, thereby subjecting them to public ridicule and embarrassment. The District Court directed the verdict against plaintiffs on the grounds that as law enforcement officers, game wardens are immune from civil liability for acts within the scope of their official duties, and that as a matter of law, the wardens had probable cause to issue the tickets to plaintiffs.

This appeal raises three issues for determination by this Court:

1. Whether the State and its Fish and Game Commission have absolute immunity from civil liability for the acts of state law enforcement officers acting within the scope of their authority.

2. Whether an individual state game warden is absolutely immune from personal civil liability for acts committed within the scope of his duties as a law enforcement officer.

3. Whether liability for malicious prosecution may arise against

the State or its law enforcement officers as a result of the filing of criminal charges against a person who is subsequently acquitted.

 The law in Montana recognizes absolute state immunity for the acts of certain state employees and officers. In some instances state immunity from civil liability for acts of state officials is statutory, as in the cases of members of the legislature, section 82-4328(2), R.C.M.1947 (Sup.1977); members of the judiciary, section 82-4329(1), R.C.M.1947 (Supp.1977); and the governor, section 82-4330, R.C.M.1947 (Supp.1977). In other instances, the courts recognize state immunity for the acts of public officials where the public need weighs heavily in favor of such a policy. Thus, in *State ex rel. Department of Justice v. District Court* (1976), 172 Mont. 88, 560 P.2d 1328, 1330, this Court held that Article II, Section 18, 1972 Montana Constitution, did not abolish state immunity for acts of the attorney general.

██ Respondents in the present case urge that the rule of state immunity which this Court applied to acts of the attorney general should also apply to acts of state game wardens in their capacity as law enforcement officers. In view of the constitutional and statutory Provisions which strictly limit the application of the sovereign immunity doctrine in Montana, we decline to extend our holdings in the *Department of Justice* case.

In *State v. District Court* (1976), 170 Mont. 15, 550 P.2d 382, 385, this Court ruled that 'a city may be held liable for the negligent acts of its police officers within the course and scope of their duties as law enforcement officers. The Court based its ruling on Article II, Section 18, 1972 Montana Constitution, and section 82-4310 of the Montana Tort Claims Act of 1973, sections 82-4301 through 82-4335, R.C.M.1947 (Supp.1977). Under this Act it concluded that the city which employed the police officers was liable for any negligent conduct of its officers, to the exclusion of the State. There was no direct agency relationship between the State and the city police officers in question; thus, since the State did not control the activities of city police officers, it could not be held responsible for their negligence. 550 P.2d at 384.

In the present case, however, the agency relationship between State and the game wardens is clear. The State Department of Fish and Game is the supervising entity over all state game wardens. Under the law at the time this action accrued, as well as present, the State has the power to appoint wardens, section 26-107, R.C.M. 1947 (Supp.1977), to suspend them without pay, to reduce their rank, or to discharge them entirely, section 26-108, R.C.M.1947 (Supp.1977). The Department may rate its wardens according to merit and efficiency, and fix their salaries accordingly. *Id.* Wardens, in turn, are required to perform all duties prescribed by the Department and must make monthly reports to it, "correctly informing the department of their activities on each day of the preceding month, with regard to the enforcement of the fish and game laws * * *." Section 26-110(4) R.C.M.1947 (Supp.1977).

While the decision in *State v. District Court* dealt with *negligent* conduct on the part of city police officers, the present case involves an alleged *intentional* tort. The Tort Claims Act, in section 82-4323(2), provides that when a state employee is sued for an act within the scope of his employment, the State must bear the entire responsibility for his conduct, unless his act was an intentional tort. This does not mean, however, that the State is responsible only for the negligent acts of its employees. Section 82-4323(2) also provides that recovery against the State constitutes a bar to recovery "* * * against the employee whose negligence *or wrongful act, error, or omission or other actionable conduct* gave rise to the claim." It is clear then, that the legislature contemplated recovery against the State not only for the negligence of its employees, but also for all other forms of actionable conduct, including intentional torts.

We hold that the State must accept responsibility for the acts of its game wardens within the course and scope of their employment, and must bear the liability, if any, for their tortious acts committed within their official authority. That the game wardens in this case acted within their authority appears conceded by all. A game warden has the authority to bring charges for violations of

the fish and game laws and may not compromise an apparent violation out of court. Sections 26-110.3(6), (7), 26-110(5), R.C.M. 1947 (Supp.1977). Further, a malicious prosecution action, unlike an action for false imprisonment, presupposes that the defendant has proceeded under proper legal authority. W. Prosser, The Laws of Torts, § 119 at 835 (4th ed. 1971).

■ The second issue raised is whether an individual state game warden is absolutely immune from personal civil liability for acts within the scope of his duties as a law enforcement officer. As in the case of state immunity, the law recognizes an absolute personal immunity from suit for certain public officials. Members of the legislature, members of the judiciary, and the governor all enjoy an immunity from suit as provided by statute. Sections 82-4328(3), 82-4329(2), and 82-4330, R.C.M.1947 (Supp.1977). Because of the public need for individual personal immunity of prosecutors, this Court also recognizes the doctrine of absolute prosecutorial immunity.

"When a prosecutor acts within the scope of his duties by filing and maintaining criminal charges he is absolutely immune from civil liability, regardless of negligence or lack of probable cause." *State ex. rel. Department of Justice v. District Court*, 560 P.2d at 1330.

■ Respondents in this case argue that this doctrine of prosecutional immunity also protects game wardens as individuals from personal liability for their law enforcement activities. However, neither the *Department of Justice* decision nor the legislature has extended absolute prosecutorial immunity to law enforcement officers.

Instead, the legislature has provided for a qualified immunity for public officers who are sued for acts done within the course and scope of their employment, other than intentional torts and felonies. Section 82-4322.1, R.C.M.1947 (Supp.1977). This qualified or limited immunity arises from the operation of section 82-4323 of the Montana Tort Claims Act of 1973, which requires that the State must be named as a defendant when one of its

employees is sued for actions arising within the course and scope of his employment. Subsection (2) of section 82-4323 provides that recovery against the State acts as a "complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence * * * or other actionable conduct gave rise to the claim." A 1974 amendment added a second to subsection (2), which provides explicit immunity for employees acting within the course and scope of their employment, but excepts from this coverage claims based upon intentional torts and felonies.

It is this more limited form of statutory immunity, rather than absolute immunity which is afforded prosecutors, that applies to law enforcement officers, including state game wardens. In *State v. District Court*, this Court applied the term "employee" as used in section 82-4310 of the Tort Claims Act to local police officers. 550 P.2d at 384. Such an interpretation of the legislature's intent fits within the commonly accepted concept of limited rather than absolute immunity from civil prosecution which is enjoyed by law enforcement officers. We accordingly reject the approach urged by respondents in their citation to the California decision of *White v. Towers*, (1951), 37 Cal.2d 727, 235 P.2d 209. In *White*, the California Supreme Court ruled that a game warden, as a law enforcement officer, "is entitled to the immunity from civil liability [for malicious prosecution] with which the law surrounds officials directly connected with the judicial process." 37 Cal.2d at 730, 235 P.2d at 211.

*White* is not representative of state rulings on immunity for law enforcement officers. Gray, Private Wrongs of Public Servants, 47 Cal.L.Rev. 303, 346 (1950). Even California has since taken a large step toward the abolition of such immunities. See generally, Val Alstyne, Governmental Tort Liability; A Public Policy Prospective, 10 U.C.L.A.L.Rev. 463 (1963). The usual approach, and that which is consistent with the most recent decision by this Court, is that absolute immunity "does not apply to all persons whose function it is to aid in the enforcement of the criminal

law". Restatement (Second) of Torts, § 656, Comment (d) (1977). As the United States Supreme Court said in *Pierson v. Ray* (1967), 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295, "[t]he common law has never granted police officers an absolute and unqualified immunity * * *." Thus, we hold that game wardens, acting within the scope of their duties as law enforcement officers, are not personally immune from suit for malicious prosecution, as such a suit falls within the statutory exception of intentional torts.

The final issue raised by appellants is whether liability for malicious prosecution may arise against the State or its law enforcement officers as a result of the filing of criminal charges against an individual who is subsequently acquitted. It is apparent that a law enforcement officer or the governmental entity which employs him should not be subject to suit for malicious prosecution whenever a judge or jury finds a criminal defendant that he has charged not guilty. Because an action for malicious prosecution runs counter to important legal and social policies, such as encouraging criminal proceedings against those who appear guilty of crime and allowing finished litigation to remain undisturbed, it is not favored by the law. *Wendel v. Metropolitan Life Ins. Co.* (1928), 83 Mont. 252, 262-63, 272 P. 245, 248-49; Prosser, *supra*, § 119 at 841. For this reason, the burden on a plaintiff in a malicious prosecution action is heavy. He may recover damages only when the requirements of the action are "fully complied with". 83 Mont. at 263, 272 P. at 248. These requirements are:

"(1) A criminal proceeding instituted or continued by the defendant against the plaintiff;

"(2) Termination of the proceeding in favor of the plaintiff;

"(3) Absence of probable cause for the proceeding; and

"(4) 'Malice' or a primary purpose other than that of bringing an offender to justice." Prosser, *supra*, § 119 at 835.

See, *Rickman v. Safeway Stores* (1951), 124 Mont. 451, 455, 227 P.2d 607, 610; *Fauver v. Wilkoske* (1949), 123 Mont. 228, 233,

211 P.2d 420, 423; *Cornner v. Hamilton* (1922), 62 Mont. 239, 242-43, 204 P. 489, 490-91.

In this case the trial court ruled as a matter of law that the game wardens had probable cause to charge Orser and Tecca. It is the function of the court to determine whether probable cause exists in a malicious prosecution action. The jury's function is limited, unlike that in other tort actions which depend upon a determination of the reasonableness of a person's acts, to finding what the defendant's acts were and the circumstances under which he acted. Restatement (Second) of Torts, § 673(1)(c), and Comment (e), (1977); *3-D Lumber Co. v. Belgrade State Bank* (1971), 157 Mont. 481, 488-89, 487 P.2d 1136, 1140; *Wendel v. Metropolitan Life Ins. Co.*, 83 Mont. at 263, 272 P. at 249. When there is no conflict in the evidence as to circumstances surrounding a defendant's actions, the court may rule on the presence or absence of probable cause without any jury findings. "The jury is not called upon to act unless there is a conflict in the testimony that presents an issue of fact for its determination." Restatement (Second) of Torts, § 673, Comment (e), (1977).

There appears to be no material conflict in the testimony regarding the circumstances which surround the game wardens' decision to charge plaintiffs. The trial judge, in his final statement to the jury granting a directed verdict, summarized the evidence of circumstances leading to his conclusion that there was probable cause to issue the tickets to both Orser and Tecca: That William Hoppe heard snow machines start up; that he heard shooting followed by a herd of elk running toward his home; that he observed two snow machines going back toward Orser's home, carrying two men and a boy; that Hoppe reported his observation to the wardens at nearby Blanding Station; that the wardens went to Orser's home where they saw Orser, Tecca and Orser's son and snow machines belonging to Orser parked in the yard; that the next day William Hoppe reported finding three freshly killed elk in the vicinity of the previous day's shooting; that the wardens investigated the scene of the dead elk and found leading from there a fresh snow machine track that terminated at Orser's doorstep.

The standard which plaintiffs must meet in this case is to show an *absence* of probable cause for the charges, coupled with *a malicious intent* to achieve some purpose other than bringing a suspected individual to justice. *Rickman v. Safeway Stores*, 124 Mont. at 456, 227 P.2d at 610. To establish that the wardens had probable cause to institute criminal proceedings, it must be shown that they had "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense with which he is charged." *Cornner v. Hamilton*, 62 Mont. at 243, 204 P. at 491. See also, *Rickman v. Safeway Stores*, 124 Mont. at 456, 227 P.2d at 610. "The defendant is not necessarily required to verify his information where it appears to be reliable." Prosser, *supra*, § 119 at 842. The circumstances here do not indicate an absence of probable cause. Nor can an inference be drawn from the evidence that the wardens harbored any malicious intent toward plaintiffs. Prior to the incidents reported to the wardens by William Hoppe, they had not known plaintiffs.

The District Court correctly directed the verdict in favor of defendants, and its judgment is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.

MR. JUSTICE SHEEHY, my concurrence is on the basis of stare decisis.