No. 82-299

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

RICHARD R. HUTTINGA, et al.,

Plaintiffs and Respondents,

-vs-

GARY W. PRINGLE, et al.,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert R. Throssell, Deputy County Attorney, argued,
Bozeman, Montana
Eleanor A. Parker, Dept. of Health, argued, Helena,
Montana

For Respondents:

Page Wellcome; argued, Bozeman, Montana

Submitted: June 6, 1983

Decided: September 8, 1983

Filed: SEP 8 - 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendants appeal from a judgment of the Eighteenth Judicial District Court, Gallatin County, granting a writ of mandamus to the plaintiffs directing Montana Department of Health and Environmental Sciences (DHES) to certify property described in a deed as not subject to sanitary restrictions, and directing the Clerk and Recorder of Gallatin County to record the deed. We reverse the judgment.

Following are the dispositive issues:

1. Did the Clerk and Recorder fail to perform a clear legal duty in refusing to file plaintiffs' certificate of survey and to record their warranty deed?

2. Did the Gallatin County Health Department (GCHD) act as an agent of the DHES when it denied a county subsurface sewage disposal system permit to plaintiffs?

3. Did the DHES violate a clear legal duty to grant plaintiffs approval of their subdivision?

The key facts are contained in the uncontested findings of fact which include the following: In 1971 the plaintiffs planned to purchase five acres of land from J. Huttinga, father of Richard, for the purpose of erecting a home for the plaintiffs. Notwithstanding that the five acres was not a subdivision under the laws of Montana in 1971, plaintiffs filed an application for an individual sewage disposal installation permit with the GCHD. An inspection of the ground was made by Emery Nelson, Gallatin County Sanitarian. After the inspection, plaintiffs were never notified by the GCHD that the septic tank and sewage disposal system did not comply with the requirements of state law or the regulations of the County or the State Board of Health, predecessor to DHES. The District Court further found that at the time Emery Nelson inspected the installation, it was in the

2

process of being constructed. At no time in the following six years did anyone notify plaintiffs that the installation would not be approved.

The District Court next found that in 1978 the plaintiffs applied to the County Clerk and Recorder for the recording of a deed, which was refused without the sanitary restrictions being either approved or removed. Plaintiffs then consulted with GCHD and discovered that the department contended the system was not approved, even though it had been installed and used for seven years. Tests made in 1979 showed no evidence of contamination of the water in the well.

While not included in the District Court finding of facts, the uncontested evidence is that the Gallatin County Sanitarian assisted the plaintiffs with the design and specifications for the sewage system in 1971, and the plaintiffs installed the system in accordance with those plans. Although Sanitarian Nelson testified at trial that the system could not be approved because there was ground water in the drainfield trenches in 1971, and that the drainfield therefore violated the County regulations requiring a 2-foot separation between the bottom of the trench and the highest water table, the District Court specifically found that any such disapproval was not communicated to the plaintiffs. Mr. Huttinga, Richard's father, testified that one of the County sanitarians had "said it was ok to go ahead and fill it." The trench was then covered. Plaintiffs occupied the trailer house and used the completed septic system for over seven years.

After the County Clerk and Recorder refused to record the deed in 1978, plaintiff Richard Huttinga and Sanitarian Nelson obtained water samples from above and below the septic system to test whether the system was polluting the water.

3

Nelson testified he believed the State might approve an existing system "if it could be shown that water, the water table, was not being degraded." Nelson subsequently returned the $4.00 testing fee to the plaintiffs, explaining that the DHES would not pass the system for State subdivision review as it lacked County approval. In addition, without County approval, the DHES would not conduct subdivision review and would not issue its own certificate of approval indicating there were no sanitary restrictions.

In May of 1979, plaintiffs attempted to file the certificate of survey and to record the deed of the 5.002 acres. The Gallatin County Clerk and Recorder refused to file the same without the DHES certificate stating there were no sanitary restrictions. Without a filed survey, the deed itself could not be recorded by the County.

In July of 1979, a tapwater sample was taken by the plaintiffs, tested by DHES, and found not to be contaminated. DHES informed the plaintiffs that "these results cannot be relied upon as indicating the safety of the water at all times unless the source is properly located and maintained." In August of 1979, GCHD notified plaintiffs that unless they complied with current, more stringent requirements for subsurface sewage disposal systems, GCHD would not approve the plaintiffs' system.

On January 31, 1980, plaintiffs petitioned the District Court for a writ of mandamus ordering the Clerk and Recorder to file the certificate of survey and record the deed. Following a hearing, the District Court joined DHES as a party defendant and set a new hearing date. Prior to that hearing, the parties stipulated that no additional testimony would be given and the transcript from the first hearing would suffice.

4

On April 5, 1982, the District Court entered judgment for the plaintiffs and issued a writ of mandamus ordering the defendants to certify that the property was subject to no sanitary restrictions and requiring the Clerk and Recorder to record the deed. By subsequent order, the Court awarded attorneys' fees of $1,539.13 to be borne equally by DHES and Gallatin County. Defendants appeal.

During the pendency of this action, Gary W. Pringle succeeded Lucille Bridges as Clerk and Recorder of Gallatin County. Because the suit is against the Clerk and Recorder in his or her official capacity, Pringle has been substituted for Bridges as a party defendant pursuant to Rule 37(c)(1), M.R.App.Civ.P.

Based upon the previously described findings of fact, which are not contested by the defendants, the District Court concluded that it was incumbent upon the Gallatin County Health Department to advise the plaintiffs of any disapproval, and that the failure to notify the plaintiffs for a period of six years after installation of the drainfield constituted grounds for estoppel under the law. While the parties agree that Gallatin County is estopped from disapproving the system, the defendants argue that it is not appropriate to estop either the Clerk and Recorder, who only has a duty to file and record or the DHES, which has not actually participated because no application has been made to it.

The issue raised by the Clerk and Recorder is whether the Clerk and Recorder failed to perform a clear legal duty by refusing to file the certificate of survey and to record the deed of the plaintiffs. Our conclusion is determined by the statutes. Sections 76-3-101 through 76-3-614, MCA constitute the chapter entitled "Montana Subdivision and

Platting Act." This chapter controls the survey required in the present case. Under section 76-3-104, MCA, a subdivision comprises a parcel less than 20 acres which has been separated from the original tract. Section 76-3-207(1), MCA provides that certain divisions of land, even though less than 20 acres, are not subdivisions under this particular chapter but are subject to surveying requirements. The Huttinga property meets one of these exceptions, that being a division outside of a platted subdivision for the purpose of a gift or sale to a member of the landowner's immediate family. Section 76-3-207(1)(b), MCA. As a result, the tract here involved is required to be surveyed under section 76-3-401, MCA. Under this chapter, there is no specific requirement for sanitary restrictions.

Sections 76-4-101 through 76-4-1251, MCA control sanitation restrictions in subdivisions. Section 76-4-102(7), MCA defines subdivisions under this chapter as parcels containing less than 20 acres of land. The key provision is section 76-4-122, MCA, which in relevant part provides:

> "(1) The county clerk and recorder shall not file or record any map or plat showing a subdivision unless it complies with the provisions of this part.
>
> "(2) A county clerk and recorder may not accept a subdivision plat for filing until one of the following conditions has been met:
>
> "(a) The person wishing to file the plat has obtained approval of the local health officer having jurisdiction and has filed the approval with the department [DHES], and the department has indicated by stamp or certificate that it has approved the plat and plans and specifications and that the subdivision is subject to no sanitary restriction . . .."

While the survey here involved is not a plat under the Montana Subdivision and Platting Act, it covers a tract defined as a subdivision under section 76-4-102(7), MCA which comes within the recording provisions referred to in section

6

76-4-122, MCA. In addition, under section 76-4-125(2), MCA, the survey must be submitted for review by the DHES. We conclude that in the present case, before the plaintiffs could file their survey, they were required to obtain the approval of the local health officer having jurisdiction and the DHES was required to certify that the division was not subject to sanitary restrictions.

The plaintiffs chose not to proceed by requesting approval of the local health officer or of the DHES, and instead have argued that all parties are estopped from any position other than an admission that the survey and plat are subject to no sanitary restrictions.

The statutes are sufficiently specific so that no contention can be made that the Clerk and Recorder was under a duty to file the survey and record the deed under the facts of this case. The Clerk and Recorder was statutorily required to refuse to file the survey and, in the absence of such a survey, to refuse to record the deed. In the absence of the required approvals from the appropriate health officer and DHES, the statutory obligation of the Clerk and Recorder to refuse a survey or plat should be enforced. The Clerk and Recorder lacks discretion to accept a survey absent compliance with the specific requirements of section 76-4-122, MCA. We therefore hold that the Clerk and Recorder did not fail to perform a clear legal duty in refusing to file the plaintiffs' certificate of survey and to record their deed.

Did the Gallatin County Health Department act as an agent of the Department of Health and Environmental Sciences when it denied a county subsurface sewage disposal system permit to the plaintiffs? Finding IX of the District Court in substance held that the GCHD was a representative and

7

in substance held that the GCHD was a representative and agent of the DHES. As such, the Court found that if the septic tank and drainfield did not meet sanitary requirements, the defendants had a duty to notify plaintiffs when the system was being installed and to stop the installation. This was not done. The DHES contends there was no statute or legal principle which would make the GCHD an agent for the State in 1971.

In 1971 when the application for the county permit was made by the plaintiffs, no subdivision review question was raised. All that the plaintiffs did was to seek a county permit from the GCHD. Plaintiffs have not cited and we have not located any statute or decision which establishes that in 1971 the GCHD could be classed as agent for the DHES or its predecessor. It was not until 1977 that section 76-4-128, MCA was amended to allow the DHES to delegate to a local government the authority to review a subdivision if the local government has qualified personnel to review adequately the water supply and sewage disposal facilities. In State v. District Court of Thirteenth Jud. Dist. (1976), 170 Mont. 15, 550 P.2d 382, this Court held that police officers are servants of the city and cannot be classed as servants or agents of the State. We reasoned that the State exercises no direct, detailed or daily supervision over a police officer and is powerless to avoid or prevent negligent acts by them. We pointed out that the State does not pay, hire or fire the policemen. In a similar manner, there is no indication here that the GCHD was in any way a servant or agent of the DHES, its predecessor or the State of Montana. The statutes show that the State and its agencies could not exercise any direct, detailed or daily supervision, or hire or fire employees, or otherwise provide the services, which were the

function of the GCHD in 1971. The record does not show that the GCHD in any way acted as agent for the DHES in 1971.

We hold that the GCHD did not act as an agent of the DHES when it denied the county sewage disposal system permit requested in 1971.

The last issue is whether the DHES violated a clear legal duty to grant the plaintiffs approval of their subdivision. As previously discussed, sections 76-4-121 to 76-4-123, MCA prohibit the filing of a map or plat with the Clerk and Recorder until DHES has certified that the subdivision is not subject to sanitary restrictions. Under the statutes, DHES has the authority and responsibility to set standards by rules for determining whether a given subdivision should be approved. Section 76-4-104, MCA sets forth the rules and standards to be adopted by the DHES, which include requiring that a copy of the plat or other documentation be furnished to DHES; evidence that a water supply is sufficient in terms of quality, quantity and dependability; evidence that the potability of water has been met; evidence that a sewage disposal facility is sufficient in terms of capacity and dependability; and standards and technical procedures applicable to sanitary sewer plans and designs, including soil percolation, testing and similar items for on-lot sewage disposal systems.

As pointed out by the DHES, no application has ever been submitted to it. Thus, the DHES has no actual knowledge of the nature of plaintiffs' system, nor of the plaintiffs' answer to any of the information which is required to be furnished to the DHES prior to its determination regarding sanitary restrictions. Absent an appropriate application to the DHES, there is no factual or statutory basis for estopping the DHES. The plaintiffs have yet to apply to the

9

DHES. We hold that the DHES has not violated a clear legal duty by failing to approve the plaintiffs' survey.

We therefore reverse the judgment of the District Court which determined that the plaintiffs are entitled to a writ of mandamus directing the Montana Department of Health and Environmental Sciences to certify that the property described in the deed is subject to no sanitary restriction and requiring the Clerk and Recorder to record the deed. We also reverse the order granting attorneys' fees to the plaintiffs.

While we do not give advisory opinions, we make the following comments with the aim of reducing further legal proceedings. With its briefs, DHES furnished to the parties a form E.S. 91B. That form describes the information required to be submitted to the DHES in connection with the sanitary facilities here in question, and requires the furnishing of a copy of the survey and other documents designed to allow assessment of the application. An application should now be made by the plaintiffs on form E.S 91B to GCHD and DHES. GCHD properly may give its approval by virtue of the basis for estoppel shown in the trial of the present case. DHES then can proceed to complete the examination of the facilities in question and determine whether under all of the facts, an approval of the system is appropriate so far as it is concerned.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice John C. Sheehy concurring and dissenting:

I agree that Gallatin County Health Department is estopped from refusing to approve the Huttinga's sewage system. It is idle for this Court to suggest a new application addressed to the Department of Health and Environmental Sciences. It will automatically refuse to approve the new application. We should not allow the Huttingas here to suffer further from bureaucratic bungling.

_____
Justice

11